IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| **DOROTHEA REYNOLDS** | ) CASE NO. |
| **c/o David B. Malik** | ) |
| **8437 Mayfield Road, Suite 101** | ) |
| **Chesterland, Ohio 44026** | ) |
| | ) JUDGE: |
| **Plaintiff,** | ) |
| | ) |
| -vs- | ) |
| | ) |
| **ROBERT W. SMITH** | ) |
| **c/o London Correctional** | ) |
| **P.O. Box 69** | ) |
| **1580 State Route 56** | ) **COMPLAINT AND JURY TRIAL** |
| **London, Ohio 43140,** | ) **REQUESTED** |
| | ) |
| **and** | ) |
| | ) |
| **WARDEN GININE TRIM** | ) |
| **c/o Ohio Reformatory for Women** | ) |
| **1479 Collins Avenue** | ) |
| **Marysville, Ohio 43040,** | ) |
| | ) |
| **and** | ) |
| | ) |
| **WARDEN SHERI DUFFEY** | ) |
| **5900 B.I.S. Road** | ) |
| **Lancaster, Ohio 43130,** | ) |
| | ) |
| **and** | ) |
| | ) |
| **OFFICER CALHOUN** | ) |
| **c/o Ohio Reformatory for Women** | ) |
| **1479 Collins Avenue** | ) |
| **Marysville, Ohio 43040,** | ) |
| | ) |
| **and** | ) |
| | ) |
| **OFFICER OWENS** | ) |
| **c/o Ohio Reformatory for Women** | ) |
| **1479 Collins Avenue** | ) |
| **Marysville, Ohio 43040,** | ) |
| | ) |

|  | ) |
| **and** | ) |
|  | ) |
| **LUKE MEEKER** | ) |
| **c/o Ohio Reformatory for Women** | ) |
| **1479 Collins Avenue** | ) |
| **Marysville, Ohio 43040,** | ) |
|  | ) |
| **and** | ) |
|  | ) |
| **CYNTHIA BARTLETT** | ) |
| **c/o Ohio Reformatory for Women** | ) |
| **1479 Collins Avenue** | ) |
| **Marysville, Ohio 43040,** | ) |
|  | ) |
| **and** | ) |
|  | ) |
| **LINDA WOODS** | ) |
| **c/o Ohio Reformatory for Women** | ) |
| **1479 Collins Avenue** | ) |
| **Marysville, Ohio 43040,** | ) |
|  | ) |
| **and** | ) |
|  | ) |
| **JENNIFER ROACH** | ) |
| **c/o Ohio Reformatory for Women** | ) |
| **1479 Collins Avenue** | ) |
| **Marysville, Ohio 43040,** | ) |
|  | ) |
| **and** | ) |
|  | ) |
| **DEAN MCCOMBS** | ) |
| **c/o Ohio Reformatory for Women** | ) |
| **1479 Collins Avenue** | ) |
| **Marysville, Ohio 43040,** | ) |
|  | ) |
| **and** | ) |
|  | ) |
| **JOHN AND JANE DOES 1-5** | ) |
| **c/o Ohio Reformatory for Women** | ) |
| **1479 Collins Avenue** | ) |
| **Marysville, Ohio 43040** | ) |
|  | ) |
|  | ) |
| **Defendants.** | ) |

2

## I.    PRELIMINARY STATEMENT

1.   This civil rights case seeks to redress the despicable, cruel and unusual punishment inflicted upon the Plaintiff Dorothea Reynolds by corrections officers at the Ohio Reformatory for Women in Marysville, Ohio. This Complaint also challenges and alleges acts that constitute the failure of various prison officials to protect Ms. Reynolds from violations of her constitutional rights committed by corrections officers, prison staff and other prisons agents. In November of 2008, Ms. Reynolds was admitted to the Ohio Reformatory for Women in Marysville, Ohio (the "ORW" or "prison"). Three months later, in February of 2009, a prison corrections officer/staff member/agent sexually assaulted Ms. Reynolds. Ms. Reynolds reported the sexual advances and assaults to prison officials but Defendants did little or nothing to protect Ms. Reynolds from the abuse she suffered at the hands of prison staff/agents. Prison officials even delayed reporting the events to the Ohio Highway Patrol for investigation.  Ms. Reynolds suffered through a number of nonconsensual sexual assaults and related threats at the hands of ORW corrections officers assigned to her cellblock. Ms. Reynolds seeks compensation for the injuries she suffered as a result of the heinous and constitutionally impermissible sexual abuse she endured while at ORW. Plaintiff also prays that her suit will protect other young women from similar assaults, a historical problem at the ORW.

## II.    JURISDICTION

2.   This claim is brought under the Civil Rights Act of 1871, 42 U.S.C. §1983. This Court has jurisdiction to hear this claim under 28 U.S.C. §§ 1331, 1343 (3) and (4). Jurisdiction over the state law claims is conferred by 28 U.S.C. §1367. Venue is proper in this Division.

## III.    THE PARTIES

3.   Plaintiff Dorothea Reynolds ("Ms. Reynolds") is a resident of Cuyahoga County and was

incarcerated in the Ohio Reformatory for Women in Marysville, Ohio during all times relevant to this action. She brings this action on her own behalf for damages resulting from the violation of rights secured by the United States Constitution and violations of laws of the State of Ohio.

4. Defendant Sheri Duffey was at all times relevant to this action an employee of the State of Ohio Department of Rehabilitation and Corrections, serving as Warden of the Ohio Reformatory for Women in Marysville, Ohio. Defendant Duffey is sued in her individual and official capacities. Defendant Duffey is a person under 42 U.S.C. §1983 and at all times relevant to this case acted under color of state law.

5. Defendant Ginine Trim is currently serving as Warden of the Ohio Reformatory for Women in Marysville, Ohio. Defendant Trim is a person is sued in her individual and official capacities. Defendant Trim is a person under 42 U.S.C. §1983 and at all times relevant to this case acted under color of state law.

6. Defendant Robert W. Smith was at all times relevant to this action an employee of the State of Ohio Department of Rehabilitation and Corrections, serving as a corrections officer in the Ohio Reformatory for Women in Marysville, Ohio. Defendant Smith is sued in his individual and official capacities. Defendant Smith is a person under 42 U.S.C. §1983 and at all times relevant to this case acted under color of state law. Mr. Smith is sued in his individual and official capacity.

7. Defendant Luke Meeker was at all times relevant to this action an employee of the State of Ohio Department of Rehabilitation and Corrections, serving as a corrections officer in the Ohio Reformatory for Women in Marysville, Ohio. Defendant Meeker is sued in his individual and official capacity. Defendant Meeker is a person under 42 U.S.C. §1983 and at all times relevant to this case acted under color of state law.

8.   Defendant Officer Owens was at all times relevant to this action an employee of the State of Ohio Department of Rehabilitation and Corrections, serving as a corrections officer in the Ohio Reformatory for Women in Marysville, Ohio. Defendant Owens is sued in his individual and official capacity. Defendant Owens is a person under 42 U.S.C. §1983 and at all times relevant to this case acted under color of state law.

9.   Defendant Cynthia Bartlett was at all times relevant to this action an employee of the State of Ohio Department of Rehabilitation and Corrections, serving as an investigator in the Ohio Reformatory for Women in Marysville, Ohio. Defendant Bartlett is sued in her individual and official capacities. Defendant Bartlett is a person under 42 U.S.C. §1983 and at all times relevant to this case acted under color of state law.

10. Defendant Officer Calhoun was at all times relevant to this action an employee of the State of Ohio Department of Rehabilitation and Corrections, serving as a corrections officer in the Ohio Reformatory for Women in Marysville, Ohio. Defendant Calhoun is sued in his individual and official capacities. Defendant Calhoun is a person under 42 U.S.C. §1983 and at all times relevant to this case acted under color of state law.

11. Defendant Linda Woods was at all times relevant to this action an employee of the State of Ohio Department of Rehabilitation and Corrections, serving as a sergeant in the Ohio Reformatory for Women in Marysville, Ohio. Defendant Woods is sued in her individual and official capacities. Defendant Woods is a person under 42 U.S.C. §1983 and at all times relevant to this case acted under color of state law.

12. Defendant Dean McCombs was at all times relevant to this action an employee of the State of Ohio Department of Rehabilitation and Corrections, serving as the Warden's Assistant in the Ohio Reformatory for Women in Marysville, Ohio. Defendant McCombs is sued in his

individual and official capacities. Defendant McCombs is a person under 42 U.S.C. §1983 and at all times relevant to this case acted under color of state law.

13. Defendant Jennifer Roach was at all times relevant to this action an employee of the State of Ohio Department of Rehabilitation and Corrections, working in the Ohio Reformatory for Women in Marysville, Ohio. Defendant Roach is sued in her individual and official capacities. Defendant Roach is a person under 42 U.S.C. §1983 and at all times relevant to this case acted under color of state law.

14. Defendants John and Jane Does #1-5 are persons and/or entities employed by the State of Ohio Department of Rehabilitation and Corrections working in the Ohio Reformatory for Women in Marysville, Ohio. These Defendants were aware of Defendant Smith's history of sexually assaulting prisoners, and also knew that Defendant Smith had begun to sexually assault Dorothea Reynolds, but did nothing to prevent Ms. Reynolds from being subjected to Defendant Smith's increasingly severe threats and assaults. These currently unknown John and Jane Doe Defendants are sued in their individual and official capacities.

## IV.    FACTS

15. Ms. Reynolds first entered ORW on November 7, 2008.

16. Ms. Reynolds suffered physically from asthma and ovarian pain when she entered ORW. She had no recorded mental health or substance abuse issues.


## A. ORW PRISON STAFF/AGENTS DISCOVER A PERSONAL LETTER IN MS. REYNOLDS'S CELL

14. ORW is a state prison facility that houses only female prisoners.

15. At all times relevant to this suit, Robert W. Smith ("Defendant Smith") was a corrections officer employed by the State of Ohio to work at the Ohio Reformatory for Women.

16. Defendant Smith was assigned as a Corrections Officer to an area known as "Shirley 1." "Shirley 1" is a term used to describe a specific section, or cellblock area, in the ORW.

17. Defendant Smith worked 3rd shift at ORW.

18. Ms. Reynolds was assigned as a prisoner to the "Shirley 1" section or cellblock in ORW, and thus came into contact with Defendant Smith.

19. Defendant Smith was responsible for among other things, the care, custody, security and well being of Ms. Reynolds when on-duty in ORW.

20. Defendant Smith was aware that Ms. Reynolds smoked cigarettes.

21. Cigarettes for prisoners were considered contraband in the ORW. Smoking cigarettes – by inmates or staff – was not permitted. Defendant Smith encouraged the Plaintiff to smoke, supplied her with cigarettes, and eventually demanded and forced sexual contact in return for the cigarettes.

22. On February 25, 2009, ORW staff, for reasons unknown at this time, searched Ms. Reynolds's cell. They discovered a letter that she had allegedly written to Defendant Smith.

23. The letter indicated that Defendant Smith had told Ms. Reynolds that he "can't wait to put his mouth" on her. The letter also specifically made reference to cigarettes Ms. Reynolds had received from Defendant Smith.

24. ORW staff completed an incident report after finding the letter. They also notified superior officers, including but not limited to the Warden, an investigator and a few sergeants, about their discovery. Defendants failed to timely notify the State of Ohio's independent investigating agency, the Ohio State Highway Patrol, about Defendant Smith's acts.

**B. DEFENDANT SMITH'S HSITORY OF SEXUALLY ASSAULTING FEMALE PRISONERS**

25. Upon discovering the letter in Ms. Reynolds cell, ORW Investigating Officer Cynthia

Bartlett ("Defendant Bartlett") interviewed Ms. Reynolds about Defendant Smith. The interview occurred on or about March 2, 2009.

26. At the time Defendant Bartlett interviewed Ms. Reynolds, she had notice and was already aware of Defendant Smith's long history of committing sexual offenses against the female prisoners in ORW.

27. In fact, on February 20, 2009, just five days before the letter was discovered in Ms. Reynolds's cell, ORW officials had assigned Defendant Bartlett to investigate allegations made by another female prisoner[1] whose breasts and stomach Defendant Smith had fondled.

28. On February 20, 2009, Defendant Bartlett interviewed this female prisoner about the allegations. During the interview, the prisoner told her that on February 19, 2009, Defendant Smith had touched her breast and stomach. The prisoner told Defendant Bartlett that Defendant Smith had also told her that she had beautiful breasts and that he wanted to suck her breast. This female prisoner told Defendant Bartlett that Defendant Smith had done similar things to her in the past in "Hale," which upon information and belief is a different section and cellblock in the ORW.

29. This female prisoner also told Defendant Bartlett that Defendant Smith had then tried to give her a cigarette the following day.

30. On February 20, 2009, Sergeant Linda Woods ("Defendant Woods") also received another formal complaint from a female prisoner who alerted Defendant Woods that Defendant Smith and Defendant Officer Owens ("Defendant Owens") allow a female out of her cell every night and bring her behind their corrections officers' desk, and that Defendant Smith engages in

---

[1] Prisoners' privacy rights protect against the release of their names. For that reason, Plaintiff has, to date, been unable to discover and identify with certainty each prisoner who made claims to ORW staff and officials that are relevant in this case.

inappropriate touching of the female prisoner. This same prisoner also reported that Defendant Smith regularly engaged in similar conduct with other prisoners.

31. Several inmates have in fact, claimed that Defendant Smith has touched them and offered cigarettes.

32. As a result of this prisoner's formal complaint, on February 20, 2009 Defendant Woods notified Warden Sheri Duffey ("Defendant Duffey"), Jennifer Roach, ("Defendant Roach"), Angela Hunsinger and Defendant Bartlett, via email, about the prisoners' report, statements and complaints.

33. Defendant Woods made and recorded a "log entry" instructing that no prisoners are to be let out of their cells during third shift in Shirley 1without "Captain's permission."

34. Defendant Smith's history of sexually assaulting prisoners is documented at least as far back as 2001 and 2002.

35. For example, On November 17, 2001, a 38 year-old female prisoner told ORW officials that she had performed oral sex on Defendant Smith.

36. On November 24, 2001, the same female prisoner notified ORW officials that she had performed oral sex on him a second time.

37. On February 28, 2002, the same inmate gave a statement to ORW officials that she had performed oral sex on Defendant Smith three times, and that he had performed oral sex on her once.

38. Records reflect that a polygraph given to the prisoner *confirmed* that these acts in fact had occurred as reported to ORW officials and Defendants.

39. In July of 2008, ORW records reflect that yet another female prisoner made a confidential statement accusing Defendant Smith of inappropriate comments and touching.

40. ORW records thus reflect that as of March 2, 2009, in the previous 7 years at least five female inmates had complained about Defendant Smith sexually touching and/or sexually assaulting them while they were in the custody of the ORW as prisoners. Three of the prisoners' complaints to ORW occurred in February or March of 2009, which was the same period the Reynolds investigation was occurring.

## C. ORW INVESTIGATED MS. REYNOLDS INTERACTIONS WITH DEFENDANT SMITH AND STILL FAILED TO PREVENT ADDITIONAL SEXUAL ASSAULTS

41. On March 2, 2009, Defendant Bartlett interviewed Ms. Reynolds regarding her interactions with Defendant Smith.

42. During this interview Ms. Reynolds told Defendant Bartlett that she had kissed Defendant Smith, that he "had touched her butt." Reynolds also indicated they had exchanged a number of letters. She also reported that Defendant Smith had given her a bag of tobacco at least four times in February.

43. In response, Defendant Bartlett only told Ms. Reynolds to report any further incidents. Defendant Bartlett failed to take further precautions to protect Ms. Reynolds.

44. Defendant Bartlett also told Ms. Reynolds that Defendant Smith has been doing things like this for years, and that Ms. Reynolds fit the description of the types of females that Defendant Smith favored.

45. Ms. Reynolds, however, remained housed in her cell in the Shirley 1 section of the prison.

46. After Ms. Reynolds's interview, Defendant Smith was also permitted, and continued to work, the third shift in Shirley 1, where he had unfettered access to Ms. Reynolds.

47. On March 4, 2009, Ms. Reynolds wrote her grandmother a letter about the prison situation, noting that the prison officials had investigated her for a "staff that likes her."

Explaining further, Ms. Reynolds's letter assured her grandmother that she was told she would not get in any trouble because prison officials were investigating Defendant Smith.

48. Defendants thus, despite notice, allowed Ms. Reynolds to be used as bait for the ORW's in-house, sexually motivated staff member, Defendant Smith.

## D. ORW CONFIRMS MS. REYNOLDS WAS HONEST ABOUT DEFENDANT SMITH'S ACTS. DEFENDANT SMITH CONTINUES TO SEXUALLY ASSAULT MS. REYNOLDS

49. On March 19, 2009, seventeen days after ORW staff and officials first learned about Defendant Smith kissing one of the prison's inmates, ORW officials had Ms. Reynolds undergo a Computerized Voice Stress Analysis ("CVSA") to assess whether Ms. Reynolds had told them the truth.

50. In March of 2009, Dean McCombs ("Defendant McCombs") was the Warden's Assistant in the ORW. At that time Defendant McCombs was also a professionally certified voice stress analyst. He administered the CVSA examination to Ms. Reynolds and performed the associated truth verification. Based on Defendant McCombs's training and experience, he professionally opined that Ms. Reynolds's CVSA results indicated she was being truthful in her answers to questions about the acts of Defendant Smith.

51. Due to the severity of Ms. Reynolds's claims, Defendant McCombs requested a second opinion from another certified voice stress analyst.  The second CVSA analyst reached the same opinion as Defendant McCombs.

52. The ORW thus had multiple confirmations that Ms. Reynolds was telling the truth.

53. On April 15, 2009, Defendant Smith approached Ms. Reynolds and told her that they should "take it a step further." Later that same day, Defendant Smith, still without limitations from the ORW, forced Ms. Reynolds to perform oral sex on him in the ORW staff bathroom.

54. On April 19, 2009, Defendant Smith gave Ms. Reynolds twenty (20) menthol cigarettes.

55.  On April 20, 2009, Ms. Reynolds wrote another letter to her grandmother. The letter discussed how a corrections officer in ORW had tried to force her to have sex with him, but that he stopped when another prisoner came nearby. Ms. Reynolds's letter indicated that the officer always touches her butt and forced her to kiss him. In her letter, Ms. Reynolds told her grandmother that this situation made her afraid to fall asleep at night, and that she didn't know what to do. Fearing for her safety, Ms. Reynolds also instructed her grandmother not to write anything about this in any letters she may send Ms. Reynolds in the future, because staff reads all incoming mail.

56. On April 21, 2009, Defendant Smith forced Ms. Reynolds to perform oral sex on him in the staff bathroom a second time.

57. On April 26, 2009, Defendant Smith gave Ms. Reynolds another twenty (20) menthol cigarettes, and also gave her jewelry.

58. On April 27, 2009, Defendant Smith forced Ms. Reynolds to perform oral sex on him in the staff bathroom for the third time.

59. ORW records prove Defendant Smith was on duty each shift that Ms. Reynolds alleged that she was forced to perform oral sex on him.

60. Upon information and belief, each time that Defendant Smith forced Ms. Reynolds to give him oral sex in the bathroom, ORW corrections officer Luke Meeker ("Defendant Meeker") was on-duty with Defendant Smith, knew what was occurring between Defendant Smith and Ms. Reynolds and acted as a "lookout" to protect Defendant Smith.

61. Defendant Meeker knew that Defendant Smith was spending extended periods of time – up to 45 minutes – in the staff bathroom alone with Ms. Reynolds.

62. On April 30, 2009, while in the "ARN" section of the prison, Ms. Reynolds was approached by corrections officer Calhoun ("Defendant Calhoun").

63. ORW records reflect that when Defendant Calhoun approached her, he told Ms. Reynolds that "she better keep her mouth closed about Smith." ORW records indicate that "Bunkie Landers," another prisoner in ORW, heard Defendant Calhoun make this threat to Ms. Reynolds.

64. On May 1, 2009, during her screening for transfer to a different facility, Ms. Reynolds told Sergeant Althaus that she had performed oral sex on Defendant Smith three times.

65. After telling Sgt. Althaus, Ms. Reynolds was finally allowed to provide a twelve page written statement to the Ohio State Highway Patrol about the incidents.

66. On May 6, 2009, a sixth female prisoner came forward about Defendant Smith's sexual acts.  This prisoner, incarcerated in NEPRC, gave a statement regarding Defendant Smith inappropriately slapping and touching her "behind" at least ten times between November of 2008 and February of 2009. The prisoner was housed in ORW at the times of the incidents. The prisoner indicated that Defendant Smith touched her behind whenever he could. This prisoner did not tell anyone at ORW when it was happening because she was afraid.

67. On May 13, 2009, this prisoner also took a polygraph test, which ***confirmed*** that she was telling the truth.

## E. THE OHIO STATE HIGHWAY PATROL INVESTIGATES MS. REYNOLDS'S VICTIMIZATION AT THE HANDS OF DEFENDANT SMITH

68. On May 5, 2009, the Ohio State Highway Patrol took a statement from Defendant Meeker about Defendant Smith and Ms. Reynolds.

69. In his statement, Defendant Meeker told investigators that he saw Defendant Smith in the staff restroom with female prisoners, but claimed it only occurred when prisoners needed paper towels and the cabinet needed to be unlocked.

70. Defendant Meeker considered acts that were "rumored" to have been committed by both him and Defendant Smith "as nothing but inmate lies."

71. On May 5, 2009, ORW officials searched Defendant Smith's bag. They found the same brand of menthol cigarettes that Ms. Reynolds – three months earlier – had told ORW staff and officials Defendant Smith had given her.

72. That same day, May 5, 2009, Ms. Reynolds was given a test to assess the truthfulness of her statements about Defendant Smith's forced sex acts and gifts for a third time. This time, Ms. Reynolds took a polygraph. And for the third time, Ms. Reynolds's answers were found to not be deceptive. It was again ***confirmed*** that she was telling the truth.

73. On May 14, 2009, Defendant Smith was interviewed for the first and only time regarding his sexual assaults of women in ORW.

74. During this interview Defendant Smith denied exchanging or receiving letters with inmates, denied giving inmates jewelry, denied giving cigarettes to inmates, and denied that any sexual acts happened to any prisoner.

75. Defendant Smith declined to take a polygraph.

76. At the conclusion of his interview, Defendant Smith told the State Highway Patrol investigator that his questions should really be asked to Ms. Reynolds. The investigator responded that "[Ms. Reynolds] is one; there are other inmates involved."

77. During Defendant Smith's interview investigators responded to his denials by telling him, "this is not the first time we have heard your name, we have heard it for several years." "If we had not heard this before or had inmates passing polygraphs it would be a little less believable." "When you worked at Hale we had other stuff that never got to this point." And that "Inmates [were] talking about smoking Newport's, that was in '96"

78. On May 19, 2009, yet another prisoner at ORW passed a polygraph about Defendant Smith grabbing her butt and rubbing his groin against her.

## F. CULPABLE CONDUCT BY STAFF AND OFFICIALS AT THE OHIO REFORMATORY FOR WOMEN

79. Defendants each acted intentionally, recklessly and with deliberate indifference to Dorothea Reynolds's federally protected constitutional rights. Defendants' acts were negligent, reckless, callous, malicious, willful and wanton.

80. Upon information and belief, each Defendant was aware and/or should have been aware that Defendant Smith was sexually assaulting Ms. Reynolds, and each knew or should have known that Defendant Smith had a long history of committing similar acts against other prisoners.

81. Each Defendant failed to protect female inmates, including Ms. Reynolds, from being victimized by Defendant Smith and from Defendant Meeker the "lookout."

82. As a direct and proximate result of each Defendants' actions and/or inactions, Ms. Reynolds suffered permanent injuries including but not limited to physical pain, humiliation, and emotional distress.

83. At all times relevant to this lawsuit, Defendant Duffey and Defendant Ginine Trim were responsible for the operation of the Ohio Reformatory for Women. These Defendants personally operated ORW pursuant to policies, procedures, practices or customs that were a moving force behind Ms. Reynolds's injuries.

84. The failure of Defendants to protect Ms. Reynolds from Defendant Smith and Defendant Meeker were a direct and proximate cause of Ms. Reynolds's injuries.

85. Upon information and belief, Defendant Duffey, Defendant Woods, Defendant Jennifer Roach, Defendant McCombs, and Defendant Bartlett (together the "Supervisory Defendants")

are all supervisory officials in ORW who had knowledge and/or should have known of Defendant Smith's history of sexual assaults upon prisoners in ORW.

86. The Supervisory Defendants were notified in February of 2009, and possibly earlier, of Smith's sexually suggestive statements, sexual demands, provision of cigarettes and forcible kissing of Ms. Reynolds and other prisoners.  Despite such notice, these Supervisory Defendants failed to protect Ms. Reynolds from Defendant Smith.

87. Each of the Supervisory Defendants failed to take any action to protect Ms. Reynolds from Defendant Smith's acts and sexual assaults. Instead, after Ms. Reynolds notified them of what Defendant Smith was doing to her, the Supervisory Defendants chose to return her to the same cell, and to the care of Defendant Smith during the prison's third shift. The Supervisory Defendants were also deliberately indifferent to Ms. Reynolds's right to be free from cruel and unusual punishment.

88.  As a direct and proximate result of the Supervisory Defendants intentional acts and/or omissions, and their deliberate indifference, Defendant Smith was able to repeatedly assault Ms. Reynolds and even attempted to force her into non-consensual sex. Defendant Smith was able to successfully force Ms. Reynolds to perform oral sex on him multiple times as a direct result of the Supervisory Defendants' acts and/or omissions.

89. Records that were created by and retained by ORW clearly indicate that Defendant Smith had forced prisoners to perform oral sex on him in the past, and investigator records indicate Defendants' knowledge of his prior oral sex with inmates. The knowledge was so extensive that ORW officials had knowledge and a profile of the "types" of females Defendant Smith preferred.

90. It was foreseeable that Defendant Smith would continue to commit such heinous acts against female prisoners, including, but not limited to Ms. Reynolds.

91. The Supervisory Defendants' acts and/or omissions ratified Defendant Smith's prior deviant acts, including but not limited to sexual assaults, and failed to protect Ms. Reynolds from the sexual abuse she was repeatedly subjected to by Defendant Smith, despite their knowledge of its likelihood. These Defendants' acts and/or omissions constituted deliberate indifference and proximately caused the injuries sustained by Ms. Reynolds.

92. Each Defendant's actions, as described above, in paragraphs 1 through 91, directly and proximately caused Ms. Reynolds to suffer physical pain, humiliation and emotional distress. Each Defendant's acts are not tolerable in a civilized society.

93. Ms. Reynolds exhausted the administrative remedies available to her prior to filing this suit.

94. Records reflect that on March 10, 2011, just over one year after he had repeatedly sexually assaulted Ms. Reynolds and numerous other inmates in ORW, ORW removed from Defendant Smith's "file" all evidence of his sexual assaults, save for a single written reprimand for "violation of rule 7 of Standards for Employee Conduct." The Ohio Department of Rehabilitation and Corrections still employs Defendant Smith as a corrections officer.

## V. FIRST CAUSE OF ACTION – 42 U.S.C. § 1983
### Violation of the Eighth and Fourth Amendments to the U.S. Constitution for cruel and unusual punishment and violation of privacy.

95. Defendant Smith, Defendant Meeker, Defendant Owens, and Defendant Calhoun each, under color of state law, have deprived Ms. Reynolds of rights, privileges and immunities secured by the Fourth Amendment and Eighth Amendment to the U.S. Constitution, including but not limited to the right to be free from cruel and unusual punishment, the right to be protected from serious harm, and the right to privacy.

## VI. SECOND CAUSE OF ACTION – 42 U.S.C. § 1983
**Violation of the Eighth Amendment and Fourteenth Amendment to the U.S. Constitution for cruel and unusual punishment, failure to protect, and violation of equal protection.**

96. Each Defendant under color of state law, deprived Ms. Reynolds of rights, privileges and immunities secured by the Eighth Amendment to the U.S. Constitution, including but not limited to the right to be free from cruel and unusual punishment and the right to be protected.

97. The rules, regulations, customs, policies and procedures of the Defendants regarding protecting a prisoner from sexual assault at the hands of a corrections officer who they knew was committing the acts and knew had committed similar acts in the past were inadequate and unreasonable and were a moving force behind the constitutional deprivations suffered by Dorothea Reynolds.

98. The Supervisory Defendants failed to adequately train ORW employees on protecting prisoners, including Dorothea Reynolds, from sexual abuse committed by fellow ORW employees. These Defendants failed to train despite the obvious need for such training, as demonstrated by repeated and documented incidents of sexual abuse occurring in the prison in the past.

99. The Supervisory Defendants ratified Defendant Smith's sexual assaultive behavior by failing to investigate and punish him following previous confirmed incidents of sexual assault.

100.    The Supervisory Defendants further ratified Defendant Smith's constitutionally impermissible conduct and assaults of Ms. Reynolds by failing to investigate, suspend, fire, discharge, question, or otherwise prevent his increasingly severe sexual assaults of Ms. Reynolds. These Defendants learned that Defendant Smith had already begun to commit such

acts against Ms. Reynolds over two months before he forced Ms. Reynolds to perform oral sex for the third and final time, yet chose to do nothing about it.

101.    In addition, the Supervisory Defendants decision to expunge from Defendant Smith's "file" all evidence of his heinous treatment of Ms. Reynolds and other prisoners, with one exception for a written reprimand, demonstrates official ratification his acts.

## VII. THIRD CAUSE OF ACTION – STATE LAW NEGLIGENT HIRING, SUPERVISION AND RETENTION

102.    Defendant Duffey's and Defendant Trim's acts and/or omissions, with respect to the injuries Ms. Reynolds sustained at the hands of Defendant Smith, constituted negligent hiring, retention and supervision of Defendant Smith and directly and proximately caused of Ms. Reynolds's injuries.

103.    Under Ohio law, Defendant Duffey and Defendant Trim – as the past and current Wardens of ORW, respectively – had entire executive charge of ORW.

104.    As clearly delineated in the Ohio Revised Code, the prison warden is, alone, responsible for appointing the necessary employees in their facility.

105.    The prison Warden also has the ultimate authority to remove employees for cause.

106.    An employment relationship existed between Defendants Smith, Owens, Meeker and Calhoun and the warden of ORW.

107.    Defendants Smith, Meeker, Owens and Calhoun were incompetent in performing their duties as corrections officers employed by ORW. Prison records confirm that Defendant Smith repeatedly sexually assaulted a number of prisoners in ORW, including Ms. Reynolds. Records also reflect that Defendant Smith accomplished his assaults, and threatened inmates about disclosing them, with the assistance of Defendants Meeker, Owens, and Calhoun. Such

acts demonstrate the incompetence – along with negligence, recklessness, malice, bad faith, willfulness, and wantonness – of Defendants Smith, Meeker, Owens and Calhoun.

108.    Defendant Duffey and Defendant Trim had actual and constructive knowledge that Defendant Smith had engaged in deviant conduct and sexually assaulted prisoners, including Ms. Reynolds. They also knew that Defendant Smith's acts demonstrated his lack of training and/or incompetence as a corrections officer. Furthermore, upon information and belief, they had knowledge or constructive knowledge that Defendant Smith's acts could not be accomplished without other ORW employees' awareness.

109.    Defendant Duffey and Defendant Trim were also aware that it was foreseeable that Defendant Smith would continue to engage in deviant conduct and /or sexually assault prisoners, including Ms. Reynolds, if prison officials, including themselves, did not intervene or address Defendant Smith's acts.

110.    Defendant Smith's sexual assaults, threatening behavior and provision of cigarettes as payment and "hush money" – along with the assistance he received from Defendants Meeker, Owens and Calhoun that enabled him to commit these acts – proximately and directly caused Ms. Reynolds's injuries.

111.    Defendant Duffey and Defendant Trim were negligent in hiring, retaining and supervising corrections officers Defendant Smith, Defendant Meeker, Defendant Owens and Defendant Calhoun, who proximately and directly caused Ms. Reynolds's injuries.

## VII. FOURTH CAUSE OF ACTION – STATE LAW INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

112.    The Defendants intended to cause emotional distress, or knew or should have known that the actions they took would result in serious emotional distress.

113.    The Defendants' conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it could be considered utterly intolerable in a civilized community.

114.    The Defendants' acts were the proximate cause of the Ms. Reynolds's physical, emotional and psychological injuries.

115.    The mental anguish suffered by the Ms. Reynolds as a result of the Defendants' acts, as described above, was serious and of a nature such that no reasonable person could be expected to endure it.

## VIII. JURY DEMAND

116.    Plaintiff hereby demands a trial by jury of all issues triable by jury.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands that this Court:

A.      Award Plaintiff compensatory damages in an amount to be shown at trial;

B.       Award Plaintiff punitive damages in an amount to be shown at trial;

C.      Award Plaintiff reasonable attorney's fees, costs and disbursements;

D.      Award Plaintiff Pre and post judgment interest;

E.      Grant Plaintiff such additional relief as the Court deems just and proper;

F.      Compel the enforcement and/ or establishment of rules, regulations, policies and procedures to prevent corrections officers and prison staff from sexually assaulting female inmates.

Respectfully Submitted,

*/s/ Dennis J. Niermann*
Dennis J. Niermann  (0007988)
Attorney For Plaintiff
David B. Malik (0023763)
Attorney for Plaintiff
Samuel S. Riotte (0082678)
Attorney for Plaintiff
8437 Mayfield Road
Suite 101-Floors 1 & 2
Chesterland, OH 44026
(440) 729-8260
(440) 729-8262 fax
dennis@niermannlaw.com
dbm50@sbcglobal.net
s.s.riotte@gmail.com

Nate Malek (0067380)
29025 Bolingbrook Road
Cleveland, Ohio 44124
216-443-0450
Attorney for Plaintiff