IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Dorothea Reynolds, | : | |
| Plaintiff | : | Civil Action 2:11-cv-00277 |
| v. | : | Judge Marbley |
| Robert W. Smith, *et al.*, | : | Magistrate Judge Abel |
| Defendants | : | |

**Report and Recommendation**

This matter before the Magistrate Judge on defendants Ginine Trim, Sheri Duffey, William Owens, Kenneth Calhoun, Cynthia Bartlett, Jennifer Roach, Dean McCombs, and the State of Ohio on behalf of Robert Smith, Luke Meeker, and Linda Woods' June 7, 2011 motion to dismiss plaintiff Dorothea Reynold's complaint (doc. 14) and defendants Luke Meeker and Robert W. Smith's August 30, 2011 motion to dismiss (doc. 25).

    **I.**    **Allegations in the Complaint**

On November 7, 2008, Reynolds entered the Ohio Reformatory for Women ("ORW"), a state prison that only houses female prisoners. Compl. at ¶¶ 15, 14. Defendant Smith, a corrections officer, was assigned third shift in Reynolds' cell block. *Id.* at ¶¶ 16-18. Smith was aware that Reynolds smoked cigarettes, but cigarettes are contraband at ORW. Smith encouraged plaintiff to smoke, supplied her with cigarettes,

1

and eventually demanded and forced sexual contact in return for cigarettes. *Id.* at ¶¶ 20-21. On February 25, 2009, ORW staff searched Reynolds' cell and found a letter that she had allegedly written to Smith. *Id.* at ¶ 22. The letter indicated that Smith had told plaintiff that he "can't wait to put his mouth" on her. *Id.* at ¶ 23. ORW staff completed an incident report after finding the letter and notified superior officers. *Id.* at ¶ 24.

On March 2, 2009, ORW Investigating Officer Cynthia Bartlett interviewed Reynolds. *Id.* at ¶ 25. At the time of the interview, Bartlett was aware of Smith's extensive history of committing sexual offenses. *Id.* at ¶ 26. Five days prior to the discovery of the letter in plaintiff's cell, Bartlett had investigated allegations concerning Smith and another prisoner. *Id.* at ¶ 27. On February 20, 2009, Sergeant Woods received a complaint from another prisoner concerning Smith. The prisoner reported that defendants Smith and Owens brought a prisoner out of her cell at night and Smith engaged in inappropriate touching. *Id.* at ¶ 30. Several inmates have reported that Smith had touched them and offered them cigarettes. *Id.* at ¶ 31.

In her interview, plaintiff told Bartlett that she had kissed defendant Smith and that he "had touched her butt." Reynolds also reported that they had exchanged a number of letters and that Smith had given her a bag of tobacco. *Id.* at ¶ 42. Bartlett told plaintiff to report any further incidents, but she took no precautions to protect her. *Id.* at ¶ 43. Bartlett also told plaintiff that Smith had been doing things like this for years, and that plaintiff fit the description of the type of females Smith favored. *Id.* at ¶ 44.

2

After the interview, Smith was permitted to continuing working third shift with unfettered access to Reynolds. *Id.* at ¶ 47

On March 19, 2009, ORW officials had plaintiff undergo a computerized voice stress analysis ("CVSA") to assess whether Reynolds had been telling the truth. The results indicated that she was being truthful in responses to questions about Smith. *Id.* at ¶ 50.

On April 15, 21, and 27, 2009, Smith forced Reynolds to perform oral sex on him in the staff bathroom. *Id.* at ¶¶ 53, 56, & 58. Defendant Meeker served as "lookout" for Smith. *Id.* at ¶ 60. On April 30, 2009, defendant Calhoun, a corrections officer, told her "she better keep her mouth closed about Smith." *Id.* at ¶¶ 62-63.

On May 1, 2009, during her screening for transfer to a different facility, Reynolds told Sergeant Althaus that she had performed oral sex on defendant Smith three times. At this time, plaintiff was allowed to provide a twelve page written statement to the Ohio State Highway Patrol. *Id.* at ¶¶ 64-65.

On May 5, 2009, Reynolds took a polygraph test, which confirmed the truthfulness of her allegations. *Id.* at ¶ 72. On May 14, 2009, Smith was interviewed for the first and only time regarding his sexual assaults of women at ORW. Smith denied the allegations and refused to take a polygraph test. *Id.* at ¶¶ 73-75.

## II. Arguments of the Parties

### A. Defendants

Defendants maintain that plaintiff has failed to exhaust her administrative remedies against any of the defendants as required by the Prison Litigation Reform Act of 1995 ("PLRA"). According to defendants, at no time did plaintiff utilize the mandatory grievance procedure. In support of their motion to dismiss, defendants attached the affidavit of Linda Coval, Deputy Chief Inspector for the Ohio Department of Rehabilitation and Correction ("ODRC").

Defendants also argue that they are entitled to immunity for the state law claims. Absent a finding by the Ohio Court of Claims that defendants were acting outside the scope of their employment or official responsibilities, or that they acted with malicious purpose, in bad faith, or in a wanton or reckless manner, they are immune from suit.

Defendants further argue that plaintiff fails to state a claim against defendants Duffey, Trim, Woods, Roach, McCombs and Bartlett. Under § 1983, a plaintiff must plead and prove that a defendant is personally responsible for the unconstitutional actions which injured him. A supervisor is not liable unless the supervisor encouraged or somehow participated in the actionable events. There is no liability under § 1983 for a mere failure to act.

    **B.**    **Plaintiff**[1]

Plaintiff argues that defendants' motion to dismiss should be denied because the motion seeks relief unavailable through Rule 12(b)(6) of the Federal Rules of Civil

---

[1] Plaintiff concedes that her state law claims fail based on her failure to obtain a ruling from the Ohio Court of Claims denying defendants immunity.

4

Procedure. When ruling on a Rule 12(b)(6) motion, the Court must take as true all facts in the complaint, and inferences must be taken in a light most favorable to plaintiff. A court may not consider matters outside the pleadings. Whether plaintiff exhausted the administrative remedies available to her is an issue of fact. The burden of proving that prisoner has failed to exhaust administrative remedies falls on defendants. Plaintiff's complaint affirmatively states that Reynolds exhausted her administrative remedies. As a result, defendants' motion must fail.

Plaintiff argues that § 5120-9-26(B) of the Ohio Administrative Code requires Coval's own office–the Chief Inspector's Office–approve the use of truth verification systems in connection with any administrative investigations at any ODRC facility. As a result, plaintiff contends that Coval's office likely not only possesses records regarding Reynolds, but actually approved the use of the tests and investigation techniques used during the investigation of her complaints. Plaintiff further argues that Coval's affidavit fails to mention the grievance procedure employed at ORW.

To the extent defendants are attempting to convert their 12(b)(6) motion into a motion for summary judgment, plaintiff argues that is too early in the litigation for such a conversion. Reynolds attached a affidavit to protect herself in the event that the Court treats defendants' motion as one for summary judgment. Plaintiff's affidavit states that although she was provided a prison handbook when she arrived at ORW, it was taken away from her shortly thereafter. Doc. 23-1 at ¶ 6. The affidavit further states that "[t]he staff at the prison told me that if I felt I needed to file any complaints against the staff

5

because of any sexual advances, I should call a specific number and report my complaint over the phone." *Id.* at ¶ 7. She further stated that: "I followed the procedure I was instructed to follow and reported to prison staff, many times, what Officer Smith and Officer Meeker were doing to me and that they needed to do something immediately. I called and reported on the exact telephone number the staff told me to call the sexual acts that Officer Smith was forcing me to do." *Id.* at ¶¶ 10-11. She maintains that she was never told that she was not following the proper reporting procedures. *Id.* at ¶ 14.

Plaintiff also argues that courts have recognized that certain circumstances can excuse the PLRA's requirement of exhaustion of administrative remedies. Courts have held that the grievance procedure becomes unavailable when prison officials have thwarted an inmate's attempt at exhaustion. General threats, threats of retaliation, along with statements to a prisoner that the current investigation must be completed before any grievance can be filed can render a grievance procedure unavailable.

Plaintiff further argues that defendants have misconstrued her complaint against the supervisory defendants. Plaintiff's claim is not based on respondeat superior. Rather, plaintiff maintains defendants have been deliberately indifferent to the need to train employees and have ratified the unconstitutional acts of their inferiors.

### III.    Federal Rule of Civil Procedure 12(b)(6)

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint in the light most

6

favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true.  *See Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (U.S. 2007) (citing *Bell v. Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007));  *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995); *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1982). Although the court must apply a liberal construction of the complaint in favor of the party opposing the motion to dismiss, *see Davis H. Elliot Co. v. Caribbean Utilities Co.*, 513 F.2d 1176, 1182 (6th Cir. 1975), a court will not accept conclusions of law or unwarranted inferences of fact cast in the form of factual allegations, *see Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005); *Blackburn v. Fisk Univ.*, 443 F.2d 121, 123-124 (6th Cir. 1971).  In reading a complaint, however, a court will indulge all reasonable inferences that might be drawn from the pleading.  *See Fitzke v. Shappell*, 468 F.2d 1072, 1076 n.6 (6th Cir. 1972).  Because the motion under Rule 12(b)(6) is directed solely to the complaint itself, *see Roth Steel Prods.*, 705 F.2d at 155; *Sims v. Mercy Hosp. of Monroe*, 451 F.2d 171, 173 (6th Cir. 1983), the court must focus on whether the claimant is entitled to offer evidence to support the claims, rather than whether the plaintiff will ultimately prevail, *see McDaniel v. Rhodes*, 512 F. Supp. 117, 120 (S.D. Ohio 1981).  A federal court cannot consider extrinsic evidence in determining whether a complaint states a claim upon which relief can be granted.  *See Roth Steel Prods.*, 705 F.2d at 155-56.

    **IV.**    **Discussion**

        **A.**    **Failure to Exhaust Administrative Remedies**

The Prison Litigation Reform Act ("PLRA") states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The requirement to exhaust administrative remedies is mandatory and "applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle*, 534 U.S. 516, 520 (2002); *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Exhaustion under the PLRA requires that a prisoner comply with all procedural rules, including filing deadlines, as a precondition to filing a civil suit in federal court, regardless of the relief offered through the administrative process. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *Booth v. Churner*, 532 U.S. 731 (2001).

In limited circumstances, however, courts have excused a prisoner's lack of compliance with a prison's grievance system. Under section 1997e(a), prisoners are only required to exhaust those remedies that are "available." The Sixth Circuit has held that the grievance procedures may become unavailable when prison officials have thwarted the inmate's attempts at exhaustion. *Brock v. Kenton County*, 93 F. App'x 793, 798 (6th Cir. 2004). Other circuits have similarly allowed exceptions on the same grounds. *See, e.g. Kaba v. Stepp*, 458 F.3d 678, 684-86 (7th Cir. 2006) (remanding the case to the district court to determine whether prison officials' threats had effectively prevented the prisoner from exhausting his administrative remedies); *see also Brown v. Croak*, 312 F.3d 109, 111-12 (3d Cir. 2002) (holding that administrative remedies were unavailable

where the prison officials erroneously told the prisoner that he must wait until the investigation was complete before filing a grievance); *Turner v. Burnside*, 541 F.3d 1077, 1085 (11th Cir. 2008) (holding that a prisoner who had been threatened with retaliation by prison officials if he filed a grievance was excused from complying with the PLRA's exhaustion requirements).

Here, defendants have not met their burden of demonstrating that plaintiff failed to exhaust the administrative remedies available to her. Plaintiff alleges that she followed the instructions she was given to report this type of abuse. She met with prison staff and reported her allegations. She was given no indication that she had not properly filed a grievance despite repeated interactions with prison staff regarding her complaints. Whether or not plaintiff's lack of compliance with the exhaustion requirement is excused is a question of fact, and it is premature, at this stage of the proceedings, to make that determination.

### B. Supervisory Defendants

Plaintiff brings claims against defendants Duffey, Woods, Roach, McCombs and Bartlett in their individual and official capacities. To establish liability under Section 1983 against an individual defendant, a plaintiff must plead and prove that the defendant was personally involved in the conduct that forms the basis of his complaint. *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). A party cannot be held liable under Section 1983 unless the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the

allegedly unconstitutional conduct. *Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989). Supervisory liability cannot be based upon the failure to act. *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

     Defendants argue that plaintiff's claims against the supervisory defendants must be dismissed because *respondeat superior* cannot be a basis for liability under § 1983. Here, the allegations adequately state a claim that the supervisory defendants knowingly acquiesced in the unconstitutional conduct of defendants Smith and Meeker. The complaint alleges that plaintiff informed defendant Bartlett that she was being subjected to unwanted advances by defendant Smith. According to the complaint, defendant Bartlett informed plaintiff that Smith had been doing similar things for years and that she fit the description of the type of females that Smith favored. Bartlett allegedly told plaintiff to report further incidences, but she took no action to prevent further contact with defendant Smith. Plaintiff further alleges that she was used as "bait" for Smith.

     The complaint also asserts a claim against the defendants in their official capacities alleging that the policies and procedures were the moving force behind the violation of her constitutional rights. Official-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 n.5 (1978)). In an official-capacity action a governmental entity is liable under § 1983 only when the entity itself is a "moving force" behind the

deprivation or the entity's "policy or custom" played a part in the violation of federal law. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

Plaintiff's claims for money damages against defendants in their official capacities fail because her claims are barred by the Eleventh Amendment. *Thiokol Corp. v. Dep't of Treas.*, 987 F.2d 376, 381 (6th Cir. 1993) The Eleventh Amendment prohibits a federal court from hearing a damages claim against a state unless Congress has explicitly abrogated a state's immunity to suit on the face of a statute or where the state itself has consented to suit. Congress did not abrogate state immunity when it enacted 42 U.S.C. § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 65-66 (1989).

### V.     Conclusion

For the reasons stated above, the Magistrate Judge RECOMMENDS that defendants Ginine Trim, Sheri Duffey, William Owens, Kenneth Calhoun, Cynthia Bartlett, Jennifer Roach, Dean McCombs, and the State of Ohio on behalf of Robert Smith, Luke Meeker, and Linda Woods' June 7, 2011 motion to dismiss plaintiff Dorothea Reynold's complaint (doc. 14) and defendants Luke Meeker and Robert W. Smith's August 30, 2011 motion to dismiss (doc. 25) be DENIED in part.  The Magistrate Judge RECOMMENDS that plaintiff's state law claims and her claims against defendants in their official capacities be DISMISSED.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof

in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *Thomas v. Arn*, 474 U.S. 140, 150-152 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005); *Miller v. Currie,* 50 F.3d 373, 380 (6th Cir. 1995).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991).

                                                s/Mark R. Abel
                                                United States Magistrate Judge