IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Dorothea Reynolds,                          :

               Plaintiff      :      Civil Action 2:11-cv-00277

 v.                                         :      Judge Marbley

Robert W. Smith, *et al.*,                  :      Magistrate Judge Abel

            Defendants       :

**ORDER**

This matter before the Court on defendants Ginine Trim, Sheri Duffey, William Owens, Kenneth Calhoun, Cynthia Bartlett, Jennifer Roach, Dean McCombs, Luke Meeker, Robert W. Smith, and the State of Ohio on behalf of Linda Woods' October 5, 2011 objections to the Magistrate Judge's September 21, 2011 Report and Recommendation denying defendants' motion to dismiss plaintiff Dorothea Reynold's complaint (doc. 31).

Upon *de novo* review in accordance with the provisions of 28 U.S.C. §636(b)(1)(B), the Court **ADOPTS** the Report and Recommendation and **DENIES** defendants' motions to dismiss.

I.      **Allegations in the Complaint**

On November 7, 2008, Reynolds entered the Ohio Reformatory for Women ("ORW"), a state prison that only houses female prisoners. Compl. at ¶¶ 15, 14.

1

Defendant Smith, a corrections officer, was assigned third shift in Reynolds' cell block. *Id.* at ¶¶ 16-18. Smith was aware that Reynolds smoked cigarettes, but cigarettes are contraband at ORW. Smith encouraged plaintiff to smoke, supplied her with cigarettes, and eventually demanded and forced sexual contact in return for cigarettes.  *Id.* at ¶¶ 20-21. On February 25, 2009, ORW staff searched Reynolds' cell and found a letter that she had allegedly written to Smith. *Id.* at ¶ 22. The letter indicated that Smith had told plaintiff that he "can't wait to put his mouth" on her.  *Id.* at ¶ 23. ORW staff completed an incident report after finding the letter and notified superior officers. *Id.* at ¶ 24.

On March 2, 2009, ORW Investigating Officer Cynthia Bartlett interviewed Reynolds. *Id.* at ¶ 25. At the time of the interview, Bartlett was aware of Smith's extensive history of committing sexual offenses. *Id.* at ¶ 26. Five days prior to the discovery of the letter in plaintiff's cell, Bartlett had investigated allegations concerning Smith and another prisoner. *Id.* at ¶ 27. On February 20, 2009, Sergeant Woods received a complaint from another prisoner concerning Smith. The prisoner reported that defendants Smith and Owens brought a prisoner out of her cell at night and Smith engaged in inappropriate touching. *Id.* at ¶ 30. Several inmates have reported that Smith had touched them and offered them cigarettes. *Id.* at ¶ 31.

In her interview, plaintiff told Bartlett that she had kissed defendant Smith and that he "had touched her butt." Reynolds also reported that they had exchanged a number of letters and that Smith had given her a bag of tobacco. *Id.* at ¶ 42. Bartlett told plaintiff to report any further incidents, but she took no precautions to protect her.  *Id.*

2

at ¶ 43. Bartlett also told plaintiff that Smith had been doing things like this for years, and that plaintiff fit the description of the type of females Smith favored. *Id.* at ¶ 44. After the interview, Smith was permitted to continuing working third shift with unfettered access to Reynolds. *Id.* at ¶ 47

On March 19, 2009, ORW officials had plaintiff undergo a computerized voice stress analysis ("CVSA") to assess whether Reynolds had been telling the truth. The results indicated that she was being truthful in responses to questions about Smith. *Id.* at ¶ 50.

On April 15, 21, and 27, 2009, Smith forced Reynolds to perform oral sex on him in the staff bathroom. *Id.* at ¶¶ 53, 56, & 58. Defendant Meeker served as "lookout" for Smith. *Id.* at ¶ 60. On April 30, 2009, defendant Calhoun, a corrections officer, told her "she better keep her mouth closed about Smith." *Id.* at ¶¶ 62-63.

On May 1, 2009, during her screening for transfer to a different facility, Reynolds told Sergeant Althaus that she had performed oral sex on defendant Smith three times. At this time, plaintiff was allowed to provide a twelve page written statement to the Ohio State Highway Patrol. *Id.* at ¶¶ 64-65.

On May 5, 2009, Reynolds took a polygraph test, which confirmed the truthfulness of her allegations. *Id.* at ¶ 72. On May 14, 2009, Smith was interviewed for the first and only time regarding his sexual assaults of women at ORW. Smith denied the allegations and refused to take a polygraph test. *Id.* at ¶¶ 73-75.

## II.    Arguments of the Parties

### A.    Defendants

Defendants argue that in deciding a motion to dismiss, the Court is permitted to consider documents "integral" to the complaint and relied upon in it even if not attached or incorporated by reference in addition to documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint. Plaintiff erroneously asserted in her complaint that she had exhausted her administrative remedies. In doing so, she has made documents pertaining to the exhaustion issue, such as Linda Coval's affidavit, integral to the complaint.

Defendants argue that the Magistrate Judge erred in relying on decisions of the Second, Third, Seventh and Eleventh Circuits as to when a prisoner's lack of compliance with a prison grievance system is excused. The Sixth Circuit only excuses an inmate's lack of compliance with the mandatory grievance procedure if prison officials thwart the inmate's attempt. Here, plaintiff has made no allegation that prison officials thwarted her attempts to comply with mandatory grievance procedures. Plaintiff acknowledged that she was aware of the mandatory grievance procedures set forth in the inmate handbook that she received upon her admission to ORW. This allegation is not alleged in her complaint.

Defendants also object to the Magistrate Judge's Report and Recommendation concerning plaintiff's complaints against the supervisory defendants Duffey, Trim,

4

Woods, Roach, McCombs and Bartlett. Defendants argue that the Magistrate Judge only referenced defendant Bartlett. No other supervisory defendants were mentioned. Defendants maintain that plaintiff failed to set forth specific allegations that each supervisory defendant encouraged or somehow participated in the actionable events.

**B.    Plaintiff**[1]

In response to defendants' objections, plaintiff incorporated her memorandum in opposition to defendants' motions to dismiss by reference. Plaintiff argues that defendants' motion to dismiss should be denied because the motion seeks relief unavailable through Rule 12(b)(6) of the Federal Rules of Civil Procedure. When ruling on a Rule 12(b)(6) motion, the Court must take as true all facts in the complaint, and inferences must be taken in a light most favorable to plaintiff. A court may not consider matters outside the pleadings. Whether plaintiff exhausted the administrative remedies available to her is an issue of fact. The burden of proving that prisoner has failed to exhaust administrative remedies falls on defendants. Plaintiff's complaint affirmatively states that Reynolds exhausted her administrative remedies. As a result, defendants' motion must fail.

Plaintiff argues that § 5120-9-26(B) of the Ohio Administrative Code requires Coval's own office–the Chief Inspector's Office–approve the use of truth verification systems in connection with any administrative investigations at any ODRC facility. As a

---

[1]Plaintiff concedes that her state law claims fail based on her failure to obtain a ruling from the Ohio Court of Claims denying defendants immunity.

result, plaintiff contends that Coval's office likely not only possesses records regarding Reynolds, but actually approved the use of the tests and investigation techniques used during the investigation of her complaints. Plaintiff further argues that Coval's affidavit fails to mention the grievance procedure employed at ORW.

To the extent defendants are attempting to convert their 12(b)(6) motion into a motion for summary judgment, plaintiff argues that is too early in the litigation for such a conversion. Reynolds attached a affidavit to protect herself in the event that the Court treats defendants' motion as one for summary judgment.  Plaintiff's affidavit states that although she was provided a prison handbook when she arrived at ORW, it was taken away from her shortly thereafter. Doc. 23-1 at ¶ 6. The affidavit further states that "[t]he staff at the prison told me that if I felt I needed to file any complaints against the staff because of any sexual advances, I should call a specific number and report my complaint over the phone." *Id.* at ¶ 7. She further stated that: "I followed the procedure I was instructed to follow and reported to prison staff, many times, what Officer Smith and Officer Meeker were doing to me and that they needed to do something immediately. I called and reported on the exact telephone number the staff told me to call the sexual acts that Officer Smith was forcing me to do." *Id.* at ¶¶ 10-11. She maintains that she was never told that she was not following the proper reporting procedures. *Id.* at ¶ 14.

Plaintiff also argues that courts have recognized that certain circumstances can excuse the PLRA's requirement of exhaustion of administrative remedies. Courts have

held that the grievance procedure becomes unavailable when prison officials have thwarted an inmate's attempt at exhaustion. General threats, threats of retaliation, along with statements to a prisoner that the current investigation must be completed before any grievance can be filed can render a grievance procedure unavailable.

Plaintiff further argues that defendants have misconstrued her complaint against the supervisory defendants. Plaintiff's claim is not based on respondeat superior. Rather, plaintiff maintains defendants have been deliberately indifferent to the need to train employees and have ratified the unconstitutional acts of their inferiors.

### III.     Federal Rule of Civil Procedure 12(b)(6)

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true.  *See Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (U.S. 2007) (citing *Bell v. Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007));  *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995); *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1982). Although the court must apply a liberal construction of the complaint in favor of the party opposing the motion to dismiss, *see Davis H. Elliot Co. v. Caribbean Utilities Co.*, 513 F.2d 1176, 1182 (6th Cir. 1975), a court will not accept conclusions of law or unwarranted inferences of fact cast in the form of factual allegations, *see Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005); *Blackburn v. Fisk Univ.*, 443 F.2d 121, 123-124 (6th Cir. 1971).  In reading a complaint, however, a court will indulge all reasonable

7

inferences that might be drawn from the pleading. *See Fitzke v. Shappell*, 468 F.2d 1072, 1076 n.6 (6th Cir. 1972). Because the motion under Rule 12(b)(6) is directed solely to the complaint itself, *see Roth Steel Prods.*, 705 F.2d at 155; *Sims v. Mercy Hosp. of Monroe*, 451 F.2d 171, 173 (6th Cir. 1983), the court must focus on whether the claimant is entitled to offer evidence to support the claims, rather than whether the plaintiff will ultimately prevail, *see McDaniel v. Rhodes*, 512 F. Supp. 117, 120 (S.D. Ohio 1981). A federal court cannot consider extrinsic evidence in determining whether a complaint states a claim upon which relief can be granted. *See Roth Steel Prods.*, 705 F.2d at 155-56.

## IV. Discussion

### A. Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act ("PLRA") states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The requirement to exhaust administrative remedies is mandatory and "applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle*, 534 U.S. 516, 520 (2002); *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Exhaustion under the PLRA requires that a prisoner comply with all procedural rules, including filing deadlines, as a precondition to filing a

civil suit in federal court, regardless of the relief offered through the administrative process. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *Booth v. Churner*, 532 U.S. 731 (2001).

The Magistrate Judge noted that in limited circumstances, however, courts have excused a prisoner's lack of compliance with a prison's grievance system. Under section 1997e(a), prisoners are only required to exhaust those remedies that are "available." The Sixth Circuit has held that the grievance procedures may become unavailable when prison officials have thwarted the inmate's attempts at exhaustion. *Brock v. Kenton County*, 93 F. App'x 793, 798 (6th Cir. 2004). The Magistrate Judge also considered that other circuits have allowed similar exceptions on the same grounds. *See, e.g. Kaba v. Stepp*, 458 F.3d 678, 684-86 (7th Cir. 2006) (remanding the case to the district court to determine whether prison officials' threats had effectively prevented the prisoner from exhausting his administrative remedies); *see also Brown v. Croak*, 312 F.3d 109, 111-12 (3d Cir. 2002)  (holding that administrative remedies were unavailable where the prison officials erroneously told the prisoner that he must wait until the investigation was complete before filing a grievance); *Turner v. Burnside*, 541 F.3d 1077, 1085 (11th Cir. 2008) (holding that a prisoner who had been threatened with retaliation by prison officials if he filed a grievance was excused from complying with the PLRA's exhaustion requirements).

The Magistrate Judge correctly concluded that defendants have not met their burden of demonstrating that plaintiff failed to exhaust the administrative remedies available to her. Plaintiff alleges that she followed the instructions she was given to

report this type of abuse. She met with prison staff and reported her allegations. She

was given no indication that she had not properly filed a grievance despite repeated

interactions with prison staff regarding her complaints. Whether or not plaintiff's lack

of compliance with the exhaustion requirement is excused is a question of fact, and it is

premature, at this stage of the proceedings, to make that determination.

### B.      Supervisory Defendants

Plaintiff brings claims against defendants Duffey, Woods, Roach, McCombs and

Bartlett in their individual and official capacities. To establish liability under Section

1983 against an individual defendant, a plaintiff must plead and prove that the

defendant was personally involved in the conduct that forms the basis of his complaint.

*Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th

Cir. 1999). A party cannot be held liable under Section 1983 unless the party personally

participated in, or otherwise authorized, approved or knowingly acquiesced in, the

allegedly unconstitutional conduct. *Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th

Cir. 1989). Supervisory liability cannot be based upon the failure to act. *Summers v. Leis*,

368 F.3d 881, 888 (6th Cir. 2004).

Defendants argue that:

[n]either the Plaintiff's *Memorandum in Opposition* nor the R&R [except for
Defendant Bartlett in the R&R] set forth anything other than legal
conclusions couched as factual allegations and/or unwarranted factual
inferences that the Defendants (collectiviely referred to as 'Supervisory
Defendants') "failed to take any action to protect" Plaintiff.

10

Doc. 31 at 4. Defendants' emphasis on allegations contained in plaintiff's memorandum in opposition and the Report and Recommendation is disingenious. The allegations *in the complaint* adequately state a claim that the supervisory defendants knowingly acquiesced in the unconstitutional conduct of defendants Smith and Meeker. As the Magistrate Judge stated, the complaint alleges that plaintiff informed defendant Bartlett that she was being subjected to unwanted advances by defendant Smith. According to the complaint, defendant Bartlett informed plaintiff that Smith had been doing similar things for years and that she fit the description of the type of females that Smith favored. Bartlett allegedly told plaintiff to report further incidences, but she took no action to prevent further contact with defendant Smith. Plaintiff further alleges that she was used as "bait" for Smith.

The complaint further alleges that following the discovery of the letter in Reynolds' cell, an incident report was completed and the superior officers, including the Warden, were notified. The supervisory defendants, however, failed to timely notify the Ohio State Highway Patrol. Compl. at ¶ 24. On February 20, 2009, defendant Woods received a formal complaint concerning Smith and Owens. *Id*. at ¶ 30. Defendant Woods notified defendants Duffey, Roach, and Bartlett about the prisoner's complaints. *Id*. at ¶ 32. The complaint further alleges that each supervisory defendant was aware that Smith was sexually assaulting plaintiff and knew that Smith had a long history of committing similar acts against other prisoners. *Id*. at ¶ 80. Defendant Smith's history of sexually assaulting prisoner is documented at least as far back as 2001 and 2002. *Id*. at

11

34. Records reflect that a polygraph given to a prisoner in 2002 confirmed her statements that she had performed oral sex on Smith three times and that he performed oral sex on her once. *Id.* at 37. The supervisory defendants were notified in February 2009, and possibly earlier, of Smith's sexually suggestive statements, sexual demands, provision of cigarettes and forcible kissing of Reynolds and other prisoners. *Id.* at ¶ 86. After Reynolds notified the supervisory defendants of Smith's behavior, they maintained her in the cell and permitted Smith continued access to her as he worked third shift. *Id.* at ¶ 87. Records created and retained by ORW clearly indicated that Smith had forced prisoners to perform oral sex on him in the past, and records of investigators indicated defendants' knowledge of his prior oral sex with inmates. *Id.* at ¶ 89. Defendant McCombs performed a computerized voice stress analysis on plaintiff and opined that her results indicated that she was being truthful in her answers to questions concerning Smith. *Id.* at ¶ 50.

The complaint further alleges that on March 10, 2011, one year after Smith assaulted Reynolds and other inmates, ORW removed all evidence of Smith's sexual assaults from his file with the exception of a single written reprimand. *Id.* at ¶ 94. The supervisor defendants failed to investigate complaints about his sexual assaultive behavior and did not punish him for confirmed incidents of sexual assault. *Id.* at ¶ 98.

Defendants rely on *Bishop v. Hackel*, 636 F.3d 757 (6th Cir. 2011) to argue that plaintiff's allegations concerning the supervisory defendants are not sufficiently specific against each separate defendant. In *Bishop*, however, the plaintiff testified in his

12

deposition that he could not recall which corrections officers he had complained to, nor was he able to describe the corrections officers, or identify when or how many times he complained. The *Bishop* plaintiff had no evidence that he had complained to certain individual defendants in the case. On this basis, the Sixth Circuit granted the defendants' motion for summary judgment in part as to certain defendants. "[A] prison official may be held to be deliberately indifferent to a substantial risk to inmate safety if he is aware that an inmate is vulnerable to assault and fails to protect [her]." *Bishop*, at 767. Here, plaintiff has adequately stated a claim with respect to the supervisory defendants.

### V.  Conclusion

For the reasons stated above, the Court ADOPTS the Magistrate Judge's September 21, 2011 Report and Recommendation. Defendants Ginine Trim, Sheri Duffey, William Owens, Kenneth Calhoun, Cynthia Bartlett, Jennifer Roach, Dean McCombs, and the State of Ohio on behalf of Robert Smith, Luke Meeker, and Linda Woods' June 7, 2011 motion to dismiss plaintiff Dorothea Reynold's complaint (doc. 14) and defendants Luke Meeker and Robert W. Smith's August 30, 2011 motion to dismiss (doc. 25) are DENIED in part.  Plaintiff's state law claims and her claims against defendants in their official capacities are DISMISSED.


     s/Algenon L. Marbley

13

Algenon L. Marbley
United States District Judge