IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DOROTHEA REYNOLDS, | : | |
| | : | Case No. 2:11-cv-277 |
| **Plaintiff,** | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| v. | : | |
| | : | |
| ROBERT W. SMITH, *et al.*, | : | Magistrate Judge King |
| | : | |
| **Defendants.** | : | |

## OPINION & ORDER

Plaintiff Dorothea Reynolds, formerly an inmate at the Ohio Reformatory for Women ("ORW"), brings the above-captioned action under 42 U.S.C. § 1983 alleging that defendant Corrections Officer Robert W. Smith sexually assaulted her, and that the remaining defendants failed to protect her, in violation of her rights under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution. This matter is before the Court on Defendants' Objections, (Doc. 110), to the Magistrate Judge's May 1, 2015 **Report and Recommendation**, ("R&R") (Doc. 109). In the R&R, the Magistrate Judge recommended that the Court deny Defendants' Motion seeking a grant of summary judgment based on the following defenses: Plaintiff's failure to exhaust administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, entitlement to qualified immunity, and the statute of limitations. (Doc. 98). Upon independent review by the Court, and for the reasons set forth below, Defendants' Objections are hereby **OVERRULED** and the Court **ACCEPTS and AFFIRMS** the Magistrate Judge's Report and Recommendation.

1

## I. BACKGROUND

### A. Factual Background

The Magistrate Judge fully set forth the facts of this case in the May 1, 2015 R&R. *See Reynolds v. Smith*, No. 2:11-CV-277, 2015 WL 1968867, at *1 (S.D. Ohio May 1, 2015). Neither party contested the Magistrate Judge's summary of the facts, nor did they include a summary of the facts in their respective briefs pending before the Court. Accordingly, this Court adopts large portions of the Magistrate Judge's facts, and will provide additional facts relevant to disposition of this matter.

**1. ORW Reporting Procedures Concerning Sexual Misconduct, Contact and Assault**

Multiple defendants testified in their depositions, and evidence in the form of written policies supports, that there are multiple "mechanisms," including both "formal and informal reporting structures," for the purpose of reporting sexual assaults as ORW. *See, e.g., Deposition of Ginine M. Trim*, Doc. 104, pp. 36–37 (*"Trim Deposition"*) (testifying that she spoke to inmates about "reporting mechanisms" for reporting sexual assaults), 41 (testifying that she "certainly talked to them [inmates] about formal and informal reporting structures").

The first source of reporting procedures for sexual assaults comes from the Ohio Department of Rehabilitation and Correction ("ODRC") "unauthorized relationship" policy, which has the purpose of maintaining professional relationships between all department employees, contractors and volunteers and inmates. ODRC Policy Number 31–SEM–07, ECF 101–2, p. 1 ("Unauthorized Relationships Policy"). Unauthorized relationships include sexual misconduct, sexual contact and sexual assault. The Policy requires that inmates be advised during orientation that unauthorized relationships are prohibited and states that inmates will be

instructed both at orientation and in the inmate handbook of the procedure for reporting unauthorized relationships. The policy states that inmates may report any knowledge or suspicion of an unauthorized relationship to any staff member, and requires that this reported information be immediately communicated to one of the following: the Inspector of Institutional Services, the Investigator, or the Managing Officer.

The second source of information regarding the proper reporting policy in the case of a sexual assault is the Inmate Handbook. Plaintiff does not contest that she received a copy of the inmate handbook in November 2008, and in May and August of 2009. The Handbook instructs inmates immediately to report sexual assaults to a prison staff member:

***INMATE ON INMATE SEXUAL ASSAULT (Department Policy 79–ISA–01)***

\* \* \* \*

> • If you are intimidated or are in fear of a sexual assault from another inmate immediately report this to a staff member or more than one staff member if necessary. You may also kite the investigator directly or any other staff member you feel comfortable reporting this to.
>
> • If you are sexually assaulted, immediately report it to a prison staff member. Do not clean yourself, brush your teeth, wash your clothes or do anything else that could destroy evidence of the assault. The sooner you report the assault the better the chances evidence can be obtained that will help prove the assault.

*The Ohio Reformatory for Women Inmate Handbook,* Doc. 98–5, p. 9 ("Inmate Handbook"). *See Raneri Deposition*, *Inspector of Institutional Services at the ORW*, Doc. 103–1, p. 44 ("*Raneri Deposition*") (testifying that the same reporting rules apply regardless of whether the sexual assault is inmate-on-inmate or staff-on-inmate). "All reported sexual assaults will be reported to the Ohio State Highway Patrol. Each case will also be administratively investigated." *Inmate Handbook*, p. 10. *See also Deposition of Warden Sheri Duffey,* Doc. 105–1, pp. 52–53 (agreeing that the only way the Ohio State Highway Patrol becomes involved in sexual assault investigations is if the prison contacts the Patrol) (*"Duffey Deposition"*). ORW's policy is that as

3

soon as a matter becomes a criminal matter or could be a criminal matter, ORW's administrative rules, regulations, policies and procedures cease and the Ohio State Highway Patrol takes over the matter. *Deposition of Cynthia Bartlett*, investigator for ORW, 101–1, pp. 45–47 (*"Bartlett Deposition"*). Relatedly, the Inmate Handbook advises that "[i]nmates who feel they are victims of inappropriate supervision shall utilize the inmate grievance procedure in accordance with Administrative Regulation 51209–31." *Inmate Handbook*, p. 10.

While according to the Handbook the inmate grievance procedure contains three steps—including filing an informal complaint resolution, notification of grievance, and appeal of the inspector's disposition of the grievance—it also identifies situations where behavior should be reported directly to staff or a supervisor. *Id.* at 10, 12. For example, "[i]n the event an inmate feels the staff persons [sic] inappropriate behavior is illegal or may jeopardize their safety, this should be reported immediately to your unit staff or supervisor." *Id.* at 10. In addition, "[s]ome complaints need quick action, such as if you were physically harmed, or have experienced an unreported sexual assault or use of force." *Id.* at 12. *See also Duffey Deposition*, pp. 23–25 (explaining that an informal complaint, the first step in the grievance procedure may be verbal); *Raneri Deposition*, p. 39 (confirming that a report of sexual assault is something that requires immediate attention). Under these circumstances, inmates are instructed to "let a supervisor know and then tell the Inspector. If you experience inappropriate supervision or retaliation, contact the Inspector directly" who may then advise the inmate "to file a grievance instead of starting with an Informal Complaint Resolution." *Inmate Handbook*, p. 12. Raneri has never received a notification of grievance regarding a sexual assault and Duffey does not recall an inmate using the grievance procedure to complain about sexual misconduct. *Raneri Deposition,* p. 38; *Duffey Deposition,* pp. 50, 56.

The third source of information regarding the proper procedure for reporting a sexual assault is the sexual awareness pamphlet that Plaintiff received at orientation. *Sexual Assault Pamphlet*, Doc. 103–2. This pamphlet advises inmates that "[i]f you have been attacked or witness an attack, but are unwilling to report it to institutional staff," the inmate may call and leave a message for central office staff who check the messages daily. *Id*. Ms. Raneri also specifically advises inmates during orientation how to report sexual assault:

> If you are being intimidated or in fear of a sexual assault from another inmate, immediately report this to a staff member or more than one staff member if necessary. You may also kite the inspector directly or any other staff member you feel comfortable reporting this to. You may also utilize the inmate grievance procedure.

*Ohio Department of Rehabilitation and Correction Female Inmate Sexual Assault Orientation,* Doc. 103–2. *See also Raneri Deposition,* pp. 39–41 (testifying that she goes over these various reporting options with inmates during orientation).

Finally, at orientation inmates are advised that they may report sexual assaults by calling a hotline, which may be called directly from any inmate phone at no cost. *Trim Deposition*, Doc. 104, pp. 42, 111. The hotline was listed on notices posted in all ORW housing units. Doc.101–2 (copy of poster, which provides the hotline number and states, in part, "Sexual Assault Is An Act of Violence ... Reporting Sexual Assault Is A Step On The Road To Recovery ..." and that the hotline "[m]ay be called direct from any inmate phone at no cost").

    **2.   Facts Pertaining to Plaintiff's Relationship with Smith and Reporting the Alleged Sexual Assaults**

Plaintiff was incarcerated at the ORW from November 7, 2008 until May 1, 2009. During this incarceration, she was housed in a unit known as "Shirley 1," which is where Smith worked. On approximately February 25, 2009, Plaintiff's cell was searched and a letter from Plaintiff to Smith was found ("the letter"). On March 2, 2009, while Plaintiff was in segregation as a result

5

of the letter, defendant Cynthia Bartlett, an investigator for ORW, spoke with Plaintiff. Plaintiff told Bartlett that Smith had kissed her and had touched her buttocks. Bartlett told Plaintiff that she was Smith's "type" "and that they had been trying to catch him for doing things like this for years."[1]

Bartlett instructed Plaintiff to report directly to her any additional incidents involving Smith. She also gave Plaintiff a phone number and told her to check in on a weekly basis. When Plaintiff was released from segregation, she was returned to Shirley 1, which Smith still monitored.

According to Plaintiff's affidavit, from April 15 to April 27, 2009 Smith forced Plaintiff to perform oral sex on him on three occasions. As will be explained, Plaintiff testifies that she repeatedly reported these assaults to investigators, while Defendants contend that it was not until April 30, 2009 that ORW investigators learned of the sexual assaults.

Plaintiff states that on April 15, 2009, after she returned to her unit, Smith told her that he knew she was working with investigators. He allegedly threatened to tell the other women in the unit that she was incarcerated because of arson which, according to Smith, the other prisoners would not like. Smith's threat frightened Plaintiff because she understood it to mean that she would be subject to harassment and physical harm from other prisoners if Smith revealed that Plaintiff was an arsonist. Directly after this exchange, Smith took Plaintiff to a bathroom and forced her to perform oral sex on him. According to Plaintiff, after this first sexual assault, investigators called upon her to meet with them again, at which time she told them that Smith

---

[1] The Magistrate Judge included in her fact section that Plaintiff underwent a certified voice stress test after speaking with Bartlett, which indicated she had been truthful regarding the fact that Smith had touched and kissed her. The Defendants object to the incorporation of these facts as hearsay. This Court finds that disposition of the summary judgment motion does not depend on this evidence, and so declines both to include such facts and also to address Defendants' argument.

had forced her to perform oral sex on him, and had threatened her because he knew she was speaking with investigators. During this meeting, investigators gave Plaintiff the hotline number for reporting sexual assaults and assured her that the reports would go directly to them. They also told her that calling the hotline was both the proper procedure to follow for reporting sexual assaults, as well as the safest procedure. Plaintiff was returned to Shirley 1 and a few days later Smith forced her to perform oral sex on him again. After the second sexual assault, Plaintiff called the hotline number. Investigators came to meet with Plaintiff. They told her that calling the sexual assault hotline was the proper way to report such assaults, but this time they told her to try to get evidence of any future sexual assault by spitting Smith's semen into a towel. Approximately one week after being returned to Shirley 1, Smith threatened Plaintiff again about talking to investigators, and forced her to perform oral sex on him for a third time. Plaintiff understood Smith's threats to mean that if she continued to speak to investigators, she would be subject to further sexual assaults and potential physical harm. After this third assault, she once again called the hotline.

Plaintiff argues that investigators never told her to put any of her reporting into writing, or to follow a reporting procedure other than calling the hotline. She further contends that she feared that Smith would retaliate against her further if she put the sexual assaults in writing.

On April 30, 2009, Plaintiff was placed in segregation on unrelated disciplinary charges of embezzlement of money, using the telephone or mail in furtherance of criminal activity, and giving false information to staff. While she was in segregation, defendant Corrections Officer Calhoun, a friend of Smith's, allegedly threatened Plaintiff "to keep [her] mouth shut about what Smith was doing." Plaintiff alleges that she feared retaliation by Smith and Calhoun.

On May 1, 2009, while in segregation, Plaintiff reported the sexual assaults to Sergeant Althouse, who then contacted the Ohio State Highway Patrol. It was on this date that the Defendants contend Plaintiff first notified anyone of the sexual assaults. The Ohio State Highway Patrol had not previously been contacted regarding Plaintiff's allegations about Smith. *Trim Deposition,* pp. 103–06. The Ohio State Highway Patrol assigned Sergeant Brimah to investigate plaintiff's allegations. *Bartlett Deposition,* p. 45; *Brimah Deposition,* p. 8. As a result of the investigation, the Ohio State Highway Patrol transferred Plaintiff out of ORW. *Id.* at ¶ 36; *Bartlett Deposition,* pp. 47–48.

### B. Procedural Background

On March 31, 2011, Plaintiff filed this § 1983 action naming ten (10) individual defendants. *Complaint*, Doc 1. This Court previously dismissed Plaintiff's state court claims and her claims against Defendants in their official capacities. *Order*, Doc. 34. Defendants moved for summary judgment on Plaintiff's remaining claims, asserting the following defenses: Plaintiff failed to exhaust administrative remedies pursuant to PLRA, a mandatory precondition to any prisoner's suit; since Plaintiff failed to exhaust her administrative remedies, Defendants were entitled to qualified immunity because Plaintiff could not establish a constitutional violation had occurred; and, Plaintiff failed to file her complaint within the two-year statute of limitations period for § 1983 claims. (Doc. 98).

On May 1, 2015, the Magistrate Judge issued an R&R denying Defendants' motion for summary judgment. (Doc. 109). As to the statute of limitations, the Magistrate Judge found the Plaintiff's claims arose out of Smith's alleged sexual assaults beginning April 15, 2009, and so Plaintiff's complaint, filed on March 31, 2009, fell within the two-year statute of limitations for § 1983 claims. Further, the Magistrate Judge denied summary judgment as to Defendants'

8

exhaustion defense, finding genuine issues of material fact regarding whether the three-step inmate grievance procedure was "available" to Plaintiff. Finally, the Magistrate Judge denied a grant of qualified immunity, as the Defendants' argument rested merely on the assertion that since Plaintiff had not exhausted her administrative remedies, Defendants were entitled to summary judgment.

On May 29, 2015, the Defendants filed objections to the Magistrate Judge's R&R. (Doc. 111). This matter has been briefed and is ripe for review.

## II. STANDARDS

When objections to a magistrate judge's report and recommendation are received on a dispositive matter, the assigned district judge "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C). After review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*; *see also* 28 U.S.C. § 636(b)(1). Only objections that are specific are entitled to a *de novo* review. *Mira v. Marshall,* 806 F.2d 636, 637 (6th Cir. 1986) (noting that "[t]he parties have the duty to pinpoint these portions of the Magistrate Judge's report that the district court must specially consider"). Indeed, "[a] general objection to the entirety of the Magistrate Judge's report has the same effect as would a failure to object." *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections that dispute the correctness of the Magistrate Judge's recommendation, but fail to specify the findings that the objector believes are in error, are "too summary in nature." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).

9

Federal Rule of Civil Procedure 56 provides, in relevant part, that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." A fact is deemed material only if it "might affect the outcome of the lawsuit under the governing substantive law." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The necessary inquiry for this Court is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In evaluating such a motion, the evidence must be viewed in the light most favorable to the nonmoving party. *United States S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013).

### III.  ANALYSIS

Defendants object to the Magistrate Judge's rejection of all three of its arguments for summary judgment. The Court will consider Defendants' objections to the Magistrate Judge's decision in turn.

#### A. Non-Exhaustion

Defendants contend that the Magistrate Judge erred in finding that the Plaintiff did not have to show she exhausted Ohio's three-step administrative grievance process before filing this § 1983 action.

The Prison Litigation Reform Act ("PLRA"), 110 Stat. 1321–71, 42 U.S.C. § 1997e(a), prevents a prisoner from filing suit "with respect to prison conditions under section 1983 . . . by a

10

prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). To satisfy this exhaustion requirement, an inmate plaintiff must "complete the administrative review process in accordance with the applicable procedural rules[.]" *Woodford v. Ngo,* 548 U.S. 81, 88, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). Non-exhaustion of a prisoner's administrative remedies is an affirmative defense under the PLRA, with the burden of proof falling on the defendant. *Jones v. Bock*, 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 224–25 (6th Cir. 2011).

First, Defendants contend that Plaintiff's claims were subject to Ohio's three-step inmate grievance procedure that consists of: (1) the filing of an informal complaint, (2) the filing of a notification of grievance, and (3) the filing of an appeal of the disposition of grievance. O.A.C. § 5120–9–31(J). The procedure is intended to "address inmate complaints related to any aspect of institutional life that directly and personally affects the grievant," including "complaints regarding policies, procedures, conditions of confinement, or the actions of institutional staff." O.A.C. § 5120–9–31(A). Certain matters are not subject to the three-step grievance process, however, including "complaints unrelated to institutional life, such as legislative actions, policies and decisions of the adult parole authority, judicial proceedings and sentencing or complaints whose subject matter is exclusively within the jurisdiction of the courts or other agencies." O.A.C. § 5120–9–31(B).

It is undisputed that the Magistrate Judge found that Plaintiff failed to initiate, let alone exhaust, the administrative grievance process prescribed under Ohio Administrative Code 5120-9-31. Defendants argue that the fact that an allegedly unconstitutional condition of confinement

11

happens to be a sexual assault is not relevant to the determination of whether the Plaintiff exhausted was required to exhaust her mandatory administrative remedies.

Defendants' argument ignores that the Magistrate Judge "declin[ed], under the particular facts of this case, to determine whether plaintiff's claims [were] subject to the usual inmate grievance procedure established by O.A.C. § 5120–9–31." *Reynolds v. Smith*, No. 2:11-CV-277, 2015 WL 1968867, at *9 (S.D. Ohio May 1, 2015). Thus, the Magistrate Judge did not resolve the parties' dispute over which "administrative remedies as are available" in Ohio prisons when it comes to accusations of sexual assault. *Id*. The Magistrate Judge did note, however, though merely as dicta, that "[t]he information provided to plaintiff upon her admission to ORW created, at the very least, ambiguity as to the proper method of reporting complaints of sexual misconduct or assault. *See, e.g., Raneri Deposition,* pp. 39–41." *Id*.

The Magistrate Judge concluded, instead, that "[e]ven assuming that sexual assaults fall within the scope of the grievance procedure established by O.A.C. § 5120–9–31, the Court concludes that the record reflects a genuine issue of material fact regarding plaintiff's compliance with those procedures or defendants' waiver of her obligation to pursue those procedures." *Id*. at *10. Specifically, taking the facts in the light most favorable to the Plaintiff, the Magistrate Judge found that genuine issues of material fact existed regarding whether prison officials made the three-step grievance process "unavailable" to Plaintiff in two ways: (1) by repeatedly assuring her that the best and safest way to report sexual assaults was through the sexual assault reporting number, which allegedly was routed directly to investigators, and (2) by Smith's threats and sexual assaults, and Calhoun's threats, which allegedly made her afraid to put her grievances in writing. The Magistrate Judge did not err in these determinations.

12

While there are few exceptions to the strict rule that a prisoner must fully comply with the prison's administrative grievance process before bringing suit, the Sixth Circuit has "excused a prisoner's lack of complete compliance when the improper actions of prison officials render the administrative remedies functionally unavailable." *Himmelreich v. Fed. Bureau of Prisons*, 766 F.3d 576, 577-78 (6th Cir. 2014), *petition for cert. filed*, (U.S. July 23, 2015) (No. 15-109) (citing *Brock v. Kenton Cnty.*, 93 Fed.Appx. 793, 798 (6th Cir.2004) (collecting cases)); 42 U.S.C. § 1997e(a). The facts of this case are similar to those in *Himmelreich*, where the prisoner plaintiff alleged that a prison staff member told him that if he proceeded with his grievances, the staff member would have him transferred to a penitentiary where he would be more likely to get beaten up. The *Himmelreich* Court found that unlike in *Boyd v. Corrections Corp. of America*, 380 F.3d 989, 997 (6th Cir.2004), the plaintiff's claims of intimidation were "specific." *Id*. at 578. It concluded that on summary judgment, the Court had to assume that a "reasonable jury could conclude that [the defendant's] actions and statements would deter a person of ordinary firmness from continuing with the grievance process." *Id*. Accordingly, the Court concluded the plaintiff demonstrated that a genuine issue of material fact existed as to whether the defendant improperly prevented him from exhausting his administrative remedies. *Id*.

In line with *Himmelreich*, this Court agrees with the Magistrate Judge that even assuming O.A.C. § 5120–9–31 applied, genuine issues of material fact exist concerning whether certain Defendants took specific, improper actions which thwarted Plaintiff's use of the grievance procedure, thus rendering it functionally unavailable to Plaintiff. Accordingly, summary judgment is improper. First, taking the facts in the light most favorable to the Plaintiff, she reported the sexual assaults to the investigators on multiple occasions, and each time the investigators allegedly steered Plaintiff away from reporting in any manner but through the

sexual assault hotline; importantly, they invoked Plaintiff's personal safety as a primary reason for reporting via the hotline. Second, Plaintiff alleges that Smith threatened her in two ways: first, by threatening to tell other inmates she was an arsonist, which he said would invite mistreatment from other inmates; and second by repeatedly sexually assaulting her, acts she believed were a direct result of her speaking with investigators. She contends that she feared that if she had put her grievances in writing, the repercussions would have been worse. Finally, Plaintiff alleges that Calhoun threatened her as well.

Defendants place absolute weight on the fact that Smith's alleged threat that he would tell other inmates that Plaintiff was an arsonist constitutes nothing more than "a nonspecific allegation of fear." *See*, e.g., *Boyd v. Corrections Corp. of America*, 380 F.3d 989, 997 (6th Cir. 2004) (finding that "non-specific allegations of fear and subjective feelings" will not excuse a failure to exhaust administrative remedies). This objection is not well taken. First, Smith's alleged threat to tell inmates that Plaintiff was an arsonist was not the only act that allegedly thwarted her from filing a written grievance. Instead, she alleges Smith's repeated sexual assaults, Calhoun's threat, and the investigators' directions to report sexual assaults through the hotline for her safety also thwarted her. Additionally, unlike in *Boyd* and like in *Himmelreich*, such a threat both was specific and also was communicated by a prison official, a person an inmate would be expected to believe regarding what might constitute a threat to her safety while in prison. Thus, it is for the jury to decide whether such a threat, in combination with all other facts, would "deter a person of ordinary firmness from continuing with the grievance process." *Himmelreich*, 766 F. 3d. at 578.

In sum, whether a jury ultimately finds Plaintiff's accusations credible is not for this Court to decide. Summary judgment is improper because genuine issues of material fact exist

regarding whether prison staff thwarted Plaintiff's use of the grievance process, rendering it unavailable.

This holding does not contradict Defendants' repetitive assertion that a facility's alleged failure to explain the grievance policy does not excuse an inmate's failure to exhaust. *See, e.g., Napier v. Laurel County*, 636 F.3d 218, 221–22 n. 2 (6th Cir. 2011) ("A plaintiff's failure to exhaust cannot be excused by his ignorance of the law or the grievance policy."). Neither does this Court's determination undermine the proposition that whether a process is "available" under the PLRA frequently turns on whether a grievance procedure was available on its face even if the prisoner subjectively believes that the procedure would be futile. *Id.* at 224. Rather, as explained *supra*, the Court declines to find a failure to exhaust not because Plaintiff did not have knowledge of the three-step procedure, but because, according to Plaintiff, multiple defendants took affirmative, improper actions which thwarted her use of the three-step procedure, assuming it applied.

Finally, this Court rejects Defendants' argument that whether or not an inmate has exhausted her administrative remedies under the PLRA is a question of law for the District Court to decide, and thus that reserving any fact questions for the jury regarding proper exhaustion is not permissible. Defendants rely on a single Michigan district court case that relies on holdings from other circuits. *See Washington v. Johnson*, No. 04-10352, 2011 WL 5375189, at *3 (E.D. Mich. Nov. 4, 2011) (collecting cases from other jurisdictions). The Sixth Circuit, in contrast, has held that in the context of ruling on a PLRA non-exhaustion defense, "[s]ummary judgment is appropriate only if defendants establish the absence of a 'genuine dispute as to any material fact' regarding non-exhaustion." *Risher v. Lappin*, 639 F.3d 236, 239-40 (6th Cir. 2011) (citing Fed. R. Civ. P. 56(a)); *see also Himmelreich*, 766 F.3d at 577-78 (denying summary judgment on

15

a non-exhaustion defense because the plaintiff demonstrated a genuine issue of material fact for the jury as to whether the defendant prevented the plaintiff from exhausting his remedies).

### B. Qualified Immunity

This Court agrees with the Magistrate Judge that to the extent Defendants argue that Plaintiff has failed to exhaust her administrate mandates, and thus that she cannot defeat Defendants' entitlement to qualified immunity, the Court's conclusion that genuine issues of material fact exist regarding exhaustion precludes a grant of qualified immunity. Defendants made no other substantive arguments pertaining to qualified immunity to the Magistrate Judge or to this Court, although they were directed to submit a motion for summary judgment on both the exhaustion issue and qualified immunity.

### C. Statute of Limitations

Defendants reiterate their argument made to the Magistrate Judge that the statute of limitations began to accrue on February 25, 2009, the date that prison officials searched Plaintiff's cell and discovered within it a letter from Plaintiff to Smith. In the alternative, they contend that since Plaintiff alleged in her complaint that the prison was on notice about Smith's inappropriate behavior on March 2, 2009, the date Plaintiff told prison officials that Smith kissed her and touched her buttocks, it stands to reason that she had knowledge at that time of Smith's inappropriate conduct. Defendants' argument misconstrues Plaintiff's claims as well as relevant law.

Plaintiff signed the complaint on March 31, 2011, so any events alleged to have arisen before March 31, 2009 generally would be considered untimely. *Browning v. Pendleton*, 869 F.2d 989, 990 (6th Cir. 1989) (two-year limitations period for actions arising in Ohio and brought under 42 U.S.C. § 1983). Generally, the limitations period starts to run "'when the

16

plaintiff knows or has reason to know of the injury which is the basis of his action.'" *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003) (quoting *Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997)).

The Magistrate concluded correctly that Plaintiff does not argue that claims arising prior to March 31, 2009 are timely. Instead, Plaintiff argues that she first suffered the harm for which she seeks redress on April 15, 2009, when Defendants allegedly failed to protect her from Smith's sexual assaults. Plaintiff is entitled to seek redress for each discrete constitutional violation allegedly committed against her. That related, prior violations may have occurred for which she does not seek timely redress has no effect on the timeliness of the claims pending before this Court. Thus, because this action was filed within two years of April 15, 2009, the first allegedly unconstitutional act for which Plaintiff seeks redress, Plaintiff's § 1983 claims are timely.

### IV. CONCLUSION

For the reasons set forth above, Defendants' objections to the Magistrate Judge's Report and Recommendation are **OVERRULED**. The Court hereby **ACCEPTS and AFFIRMS** the Magistrate Judge's Report and Recommendation denying Defendants' Motion for Summary Judgment. (Doc. 109).

**IT IS SO ORDERED.**

                                  s/ Algenon L. Marbley
                                  **ALGENON L. MARBLEY**
                                  **UNITED STATES DISTRICT JUDGE**

**DATED: September 8, 2015**