IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **DORTHEA REYNOLDS,** | : | |
| | : | Case No. 2:11-CV-277 |
| **Plaintiff,** | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| v. | : | |
| | : | Magistrate Judge Jolson |
| **ROBERT SMITH,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

**OPINION & ORDER**

**I.      INTRODUCTION**

Plaintiff Dorothea Reynolds, formerly an inmate at the Ohio Reformatory for Women ("ORW"), brought suit under 42 U.S.C. § 1983 alleging that Defendant Corrections Officer Robert W. Smith sexually assaulted her, and that remaining Defendants, Warden Sherri Duffey, Warden Ginnie Trim, Corrections Officer Luke Meeker, Corrections Officer Owens, Corrections Officer Calhoun, Sergeant Linda Woods, Warden's Assistant Dean McCombs, ORW employee Jennifer Roach, ORW investigator Cynthia Bartlett, and five unnamed Defendants failed to protect her. (Doc. 1 at 4-6.) This matter is before the Court on Defendants' Motion for Reconsideration and, in the alternative, Motion for Interlocutory Review (Doc. 119). For the following reasons, the Court **DENIES** the motions.

**II.     BACKGROUND**

On May 1, 2015, the Magistrate Judge recommended that Defendants' motion to dismiss be denied. (Doc. 109.) On September 8, 2015 the Court overruled Defendants' objection to the Magistrate's recommendation. (Doc. 114.) Both reports fully laid out the facts of this case.

1

(Docs. 109; 114.) Accordingly, the Court will focus on the specific facts pertinent to the instant motion.

On February 25, 2009, a letter was found in Plaintiff's cell addressed to Defendant Smith. (Doc. 114 at 4-5.) Following the discovery, Defendant Cynthia Bartlett, an investigator for ORW, approached Plaintiff. (*Id.* at 6.) Plaintiff revealed that Defendant Smith had kissed her and touched her buttocks. (*Id.*) Bartlett instructed Plaintiff to contact her if there were any additional incidents. (*Id.*) After returning to general population, Plaintiff alleges that Defendant Smith threatened to tell other inmates falsely that she was in jail for arson if she did not stop speaking with investigators. (*Id.*) Smith then proceeded to force Plaintiff to perform oral sex on him. (*Id.*) Following the first assault, Plaintiff claims that she met with investigators again and that they gave her a hotline number, which they told her was the proper and safe way to report a sexual assault. (*Id.* at 7.) After both the second and third assaults, Plaintiff called the hotline, and was told again that the hotline was the correct way to report a sexual assault. (*Id.*) On April 30, 2009, Plaintiff was in segregation on an unrelated incident when a friend of Defendant Smith, Defendant Corrections Officer Calhoun, threatened Plaintiff, telling her to "keep [her] mouth shut about what Smith was doing." (*Id.*) This, according to Plaintiff, caused her to fear that Smith and Calhoun would retaliate against her if she reported the incidents. (*Id.*) Plaintiff avers that her fears prevented her from documenting the incidents in writing. (*Id.*) On May 1, 2009, Plaintiff reported the assaults to Sergeant Althouse, who then contacted the Ohio State Highway Patrol. (*Id.* at 8.)

The Defendants' sole objection in their motion to reconsider is that it was clear error to allow Plaintiff's action to continue even though the Court found that Plaintiff failed to exhaust

her administrative remedies, which is a mandatory requirement under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). (Doc. 119 at 1.)

In the alternative, Defendants move under 28 U.S.C. § 1292(b) for the Court to certify for interlocutory appeal "the issue of Plaintiff's exhaustion of her administrative remedies under 42 U.S.C. § 1997e." (*Id.* at 15.)

### III. STANDARDS OF REVIEW

### A. Reconsideration

The Court will treat Defendants' motion to reconsider "as a motion to alter or amend a judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure," *Gascho v. Global Fitness Holdings, LLC*, 918 F. Supp. 2d 708, 713-14 (S.D. Ohio 2013) (citing *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 617-18 (6th Cir. 2002)), which allows a party to file a "motion to alter or amend a judgment . . . no later than 28 days after the entry of the judgment." To persuade a district court to grant a motion to alter a judgment, the movant must demonstrate: "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Henderson v. Walled Lake Consol. Schs.*, 469 F.3d 479, 496 (6th Cir. 2006) (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)). Such a motion is designed solely to "correct manifest errors of law or fact or to present newly discovered evidence." *Gascho*, 918 F. Supp. 2d at 714 (citing *Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997)). It is not, however, an avenue for an unhappy litigant "to reargue issues already presented" in an effort to reach a different result. *Encompass Indem. Co. v. Halfhill*, No. 5:12-CV-00117-TBR, 2014 WL 1343392, at *1 (W.D.Ky., Apr. 3, 2014) (citing *Whitehead v. Bowen*, 301 F. App'x 484, 489 (6th Cir. 2008) (citing *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998))). Due to the importance of finality in the administration of justice, a motion to reconsider should be granted only in

extraordinary circumstances, such as a complete failure to address an issue or claim. *Solly v. Mausser*, No. 2:15-CV-956, 2016 WL 74986, at *1 (S.D. Ohio, Jan. 7, 2016) (citation omitted). Finally, the decision of whether to grant or deny a motion to reconsider under Rule 59(e) lies "within the informed discretion of the district court." *Huff v. Metropolitan Life Ins. Co.*, 675 F.2d 119, 122 (6th Cir. 1982).

### B. Interlocutory Appeal

The Court may, in its discretion, grant permission to certify for interlocutory appeal a matter in an order only when: "(1) the order involves a controlling question of law, (2) a substantial ground for difference of opinion exists regarding the correctness of the decision, and (3) an immediate appeal may materially advance the ultimate termination of the litigation." *In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002) (citing 28 U.S.C. § 1292(b)) (citation omitted). Requests for such an appeal are granted "sparingly and only in exceptional cases." *Id.* (citing *Kraus v. Bd. of Cnty. Rd. Comm'rs*, 364 F.2d 919, 922 (6th Cir. 1966)).

### IV. ANALYSIS

### A. Reconsideration

Defendants request the Court to reconsider because the Court: (1) defied the plain language of the PLRA; and (2) did not require Plaintiff to demonstrate either the specific affirmative steps that she took to seek administrative remedies or the specific actions that each Defendant took to thwart those attempts. (*Id.* at 2-3.) Most of the Defendant's argument as to the former is a resuscitation of their objections to the Magistrate Judge's R&R, which the Court has already thoroughly addressed. (*See* Doc. 114, *passim*.) Defendants' assertion of the latter is procedurally inappropriate, and their argument concerning it is wrong on the merits. The Court will address each argument in turn.

4

1. Exhaustion

As to exhaustion, Defendants contend that "the Court found that Plaintiff failed to exhaust her administrative remedies, yet excused her failings by finding that the Defendants 'collectively' – 'took specific, improper actions which thwarted Plaintiff's use of the grievance procedure, thus rendering it functionally unavailable to Plaintiff.'" (Doc. 119 at 4.) Defendants contend that the Court's doing so was in violation of controlling Sixth Circuit Court of Appeal and Supreme Court interpretations of the PLRA. Defendants' arguments are misplaced and mistaken.

Defendants first rely on *Woodford v. Ngo*, 548 U.S. 81 (2006), to argue that the exhaustion requirement under the PLRA is no longer left to the discretion of the district court, and that "'[p]risoners must now exhaust all "available" remedies, not just those that meet federal standards[,]'[]even where the relief sought[—]monetary damages[—]cannot be granted by the administrative process." (Doc. 119 at 9) (citing *Woodford*, 548 U.S. at 85 (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001))). On this point there is no disagreement, and the Court's denial of Defendants' first motion for summary judgment suggested nothing in contradiction to Defendants' understanding of this portion of *Woodford*. But to the extent that Defendants suggest that *Woodford* requires absolute exhaustion with no exceptions, more discussion is in order.

The plaintiff in *Woodford* was found not to have properly exhausted his remedies specifically because he purposefully filed an untimely grievance to make unavailable his administrative remedy, flouting the administrative process by deliberately bypassing procedural rules. *Woodford*, 548 U.S. at 82. Although the Supreme Court found that proper exhaustion was a requirement of the PLRA, Justice Breyer, in his concurrence, noted that "[the Second and Third Circuits] have interpreted the statute in a manner similar to that which the Court . . . adopt[ed,]

5

. . . conclud[ing] that the PLRA's proper exhaustion requirement is not absolute," and that "[a] lower court should similarly consider any challenges that respondent may have concerning whether his case falls into a traditional exception that the statute implicitly incorporates." *Woodford*, 548 U.S. at 104 (Breyer, J., concurring). The Sixth Circuit has since followed Justice Breyer's suggestion.

In *Himmelreich v. Federal Bureau of Prisons*, 766 F.3d 576, 577 (6th Cir. 2014) (*j. aff'd*, 136 S.Ct. 1843 (June 6, 2016)), and as discussed at length in prior orders of the Court, the Sixth Circuit explicitly held that an implicit exception exists when a defendant prevent a plaintiff from seeking administrative remedies due to intimidation. 766 F.3d at 577 ("There are few exceptions to [the exhaustion requirement], but we have excused a prisoner's lack of complete compliance when the improper actions of prison officials render the administrative remedies functionally unavailable.") (citing *Brock v. Kenton Cnty.*, 93 F. App'x 793, 798 (6th Cir. 2004)). The issue at hand falls squarely into that exception, which the Court has found and explained multiple times, (*see* Docs. 109 at 19; 114 at 13), and to which Defendants have failed to respond with any new argument. Accordingly, the Court committed no clear error in law by allowing Plaintiff's action to proceed, relying on the *Himmelreich* exception.

Defendants make two remaining arguments regarding exhaustion: (1) that Plaintiff's allegations fail for lack of specificity; and (2) that Plaintiff may not argue exhaustion simply because the Highway Patrol took over the investigation of her report of sexual assault. Both are meritless. As to the former, a prisoner must assert more than "vague and conclusory allegations" that improper actions of prison officials that "would deter a person of ordinary firmness from continuing with the grievance process have made administrative remedies functionally unavailable, *Himmelreich*, 766 F.3d at 578 (citing *Boyd v. Corrections Corp. of America*, 380

F.3d 989, 997 (6th Cir. 2004)). Plaintiff has done so. Plaintiff alleged that she was thwarted by, among other actions, Defendant Smith threatening that he would tell other inmates that she was an arsonist, and Defendant Calhoun telling her to "keep her mouth shut" about Smith's sexual assaults. These allegations are not vague or conclusory. *Cf. Boyd*, 380 F.3d at 997-98 (upholding the district court's finding that a prisoner's allegation that he did not file a grievance because "he feared for his safety. . . ." was too vague and conclusory to show exhaustion). As to the latter, Defendant Bartlett testified in deposition that when the Ohio State Highway Patrol takes over an investigation, "then pretty much [the prison] administrative process stops." (Bartlett Depo., Doc. 101-1 at 46.) As noted in the Court's upholding the Magistrate's R&R, the Court need only be satisfied that there is a question of fact regarding non-exhaustion under the PLRA, not that Plaintiff has definitively exhausted her administrative remedies. *Risher v. Lappin*, 639 F.3d 236, 239-40 (6th Cir. 2011) (quoting Fed. R. Civ. P. 56(a) ("Summary judgment is appropriate only if defendants establish the absence of a 'genuine dispute as to any material fact' regarding non-exhaustion.")). Plaintiff's averments and Bartlett's testimony give rise to such a question.

### 2. Specificity

Defendants argue that the Court erred by not requiring Plaintiff to demonstrate the affirmative steps she took to use the grievance procedure and the specific acts that each Defendant took to thwart her efforts. (Doc. 119 at 4-5.) Defendants argue that "[n]ot only must the Court make a determination as to each individual Defendant, but it must reference evidence as to a specific action Defendants Smith and Calhoun engaged in which prevented Plaintiff from proceeding through the mandatory exhaustion process." (Doc. 119 at 4.) Defendants' theory is both procedurally inappropriate and meritless.

As to procedure, Defendants introduced this theory for the first time in their motion for reconsideration, which is inappropriate. *McConocha v. Blue Cross and Blue Shield Mut. of Ohio*, 930 F. Supp. 1182, 1184 (N.D. Ohio 1996) ("It is not the function of a motion to reconsider . . . to . . . proffer a new legal theory or new evidence to support a prior argument when the legal theory or argument could, with due diligence, have been discovered and offered during the initial consideration of the issue.") (citation and quotation marks omitted). This is, after all, a motion for *re*consideration.

As to the merits, Defendants rely on *Bishop v. Hackel*, 636 F.3d 757 (6th Cir. 2011), for the proposition that, in order for Plaintiff to survive summary judgment, the Court must make an individual determination of which Defendants took which specific actions to thwart Plaintiff. Defendants' reliance on *Bishop* is misplaced. The motions for summary judgment under consideration in *Bishop* concerned the defense of qualified immunity as to each defendant, not the procedural question of whether the plaintiff had exhausted his administrative remedies. This is meaningful because the issues of qualified immunity in *Bishop* were whether the plaintiff could set forth facts which, if true, were enough to overcome the qualified-immunity presumption afforded prison workers and other state agents. *Bishop*, 636 F.3d at 764 ("The district court found that a jury could conclude that the [defendants] were aware of a substantial risk of harm to [the plaintiff] and chose to ignore it, thereby violating [his] constitutional rights.") Here, Defendants' sole argument is that Plaintiff failed to exhaust her administrative remedies. Defendants' interpretation of the PLRA and guiding case law would thus give prison workers freedom to violate a plaintiff's rights with abandon so long as the particular defendant did not personally render administrative remedies unavailable. That result would be preposterous. Exhaustion of administrative remedies is a mandatory showing, but it does not

8

concern the merits of either a plaintiff's claims as to a defendant's alleged violations or a defendant's assertion of qualified immunity. The Court **DENIES** Defendants' Motion for Reconsideration.

### B. Motion to Certify for Interlocutory Appeal

Interlocutory appeals are appropriate only when the district judge believes that: (1) the issue involves a controlling question of law; (2) there are substantial grounds for difference of opinion; and (3) the order may materially advance the ultimate termination of the litigation. 28 U.S.C § 1292(b). Here, while prongs one and three lean towards the grant of an interlocutory appeal, prong two dispositively militates against it.

Defendants' assertion that the issue of exhaustion is up for debate due to the Sixth Circuit's decision in *Himmelreich*, 766 F.3d 576, is unavailing. According to Defendants, there is ground for substantial disagreement as to the appropriateness of the Court's denial of their motion for summary judgment even though the Court failed to find that Plaintiff had "sustained her burden of demonstrating the grievance process was made unavailable to her." (Doc. 119 at 16.) On this point *Himmelreich* could not be clearer—a plaintiff will survive a motion for summary judgment so long as the district court is satisfied that there is a genuine issue of material fact as to whether a prison official improperly thwarted the plaintiff's exhaustion of administrative remedies. 766 F.3d at 578 ("Accordingly, we conclude that [the plaintiff] has demonstrated that a genuine issue of material fact exists as to whether [the defendant's] actions improperly prevented [the plaintiff] from exhausting his administrative remedies."). This is to say that Plaintiff does not need to demonstrate that she exhausted administrative remedies, but rather need only give rise to a question of fact as to exhaustion, which is exactly what the Court has found. (*See* Docs. 109 at 20-21; 114 at 14-15.) Because there is no substantial, or indeed any,

ground for a difference of opinion on the matter, the Court **DENIES** Defendants' Motion to Certify for Interlocutory Review.

### III. CONCLUSION

Based on the foregoing, the Court **DENIES** Defendants' Motion for Reconsideration and, in the alternative, Motion to Certify for Interlocutory Review (Doc. 119).

**IT IS SO ORDERED.**


            /s/ Algenon L. Marbley
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:  August 25, 2016**