# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **DOROTHEA REYNOLDS,** | : | |
| | : | **Case No. 2:11-cv-277** |
| **Plaintiff,** | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| **v.** | : | |
| | : | **Magistrate Judge Jolson** |
| **ROBERT W. SMITH,** *et al.,* | : | |
| | : | |
| **Defendants.** | : | |

## OPINION AND ORDER

Plaintiff  Dorothea Reynolds, formerly an inmate at the Ohio Reformatory for Woman ("ORW"), brings the above-captioned action under 42 U.S.C. § 1983 alleging that defendant Corrections Officer Robert W. Smith sexually assaulted her, and that the remaining defendants failed to protect her, in violation of her rights under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.  This matter is before the Court on Defendants' motion for summary judgment (Doc. 230) contending that there are no genuine issues of material fact and seeking dismissal of this action on three grounds:  (1) Ms. Reynolds failed to exhaust her administrative remedies against all Defendants; (2) Ms. Reynolds' failure to protect claims are time barred under the two-year statute of limitations for actions under 42 U.S.C. § 1983 as to Defendants Cynthia Bartlett, Kenneth Calhoun, Warden Sheri Duffey, Dean McCombs, Luke Meeker, William Owens, Jennifer Roach, and Linda Wood; and (3) all Defendants are entitled to qualified immunity on Ms. Reynolds' failure to protect claim.  Ms. Reynolds has responded and the motion has been fully briefed.  For the reasons set forth below Defendants' motion is **GRANTED in part** and **DENIED in part**.

# I.   BACKGROUND

## A.  Factual Background

### 1.   Preliminary Matters

The Court's record is replete with lengthy recitations of the factual background of this case. To say that this case is extremely fact intensive would be gross understatement.   Given the nature of the claims, the ten named defendants, and the  numerous depositions and other evidentiary materials garnered over the six- year span of this case, sorting out the relevant facts has been extremely time intensive.  The Court has not been aided by the parties' briefing and lackadaisical citation to the record.  Some of the citation efforts fairly can be characterized as akin to stating "here's a fact based on evidence we once filed with the Court."  Notably, however, this turned out not to be the case with respect to certain evidentiary materials, prompting Court intervention.  With respect to certain other materials, however, that appears to still be the case.  The presentation of evidentiary material in this case can fairly be characterized as haphazard.

The Court will not repeat facts directed specifically to the issue of exhaustion.  Rather, the Court incorporates by reference the facts relating to that issue as set forth in the *Report and Recommendation* issued May 1, 2015 (Doc. 109), and as adopted and expanded by the Court in its *Opinion and Order* issued September 8, 2015 (Doc. 114).  For purposes of the more substantive issues raised by the current motion for summary judgment, the Court provides the following facts, to the best of its ability, given the manner of presentation.

### 2.   Facts Relevant to the Remaining Issues Raised

There is no dispute that Ms. Reynolds was incarcerated at the ORW from November 7, 2008 until May 1, 2009.  During this time, aside from time spent in segregation, she resided in the unit known as "Shirley 1."  Mr. Smith worked third-shift in this unit.

The remaining facts relevant here, construed in the light most favorable to Ms. Reynolds, are more easily explained by the following timeline.

**February 20, 2009**. Sgt. Linda Wood sent an email to Ms. Duffey, Ms. Roach, and Ms. Bartlett at 9:07 a.m. Reply, Doc. 248-3. That email stated in its entirety:

> I received a complaint from [Inmate 1] that Officer Smith and Officer Owens of Shirley 1 (third shift) has an inmate out every night and allow her at and behind the desk. [Inmate 1] states Officer Smith touched her and other inmates inappropriately while in admission and while in Shirley one. Inmate state Officer Smith has the inmate take trash out at night and they do not come in right away. [Inmate 1] states there are a lot of other inmates in Shirley 1 who has claimed that Officer Smith has touched them and offer her cigarettes. I did do a log entry on this date to not allow any Inmates out on third shift without Captains permission.

Upon receipt of this email, Warden Duffey assigned Cindy Bartlett to be the investigating officer. Declaration of Cynthia Bartlett, Doc. 230-1, ¶ 9 ("Bartlett Dec."). Ms. Roach was also an investigator and worked with Ms. Bartlett. Deposition of Jennifer Roach, Doc. 251-1, p. 28 ("Roach Depo."). Ms. Bartlett prepared an ORW Investigation Report . Doc. 101-2 ("ORW Report"). That document states, in relevant part:

> We interviewed [Inmate 1] on 2/20/09 and she wrote a statement (exhibit B).
>
> 1. I asked her what happened with Officer Smith? She replied he touched by (sic) breast and stomach last night 2/19/09. This happened and I was in bed in Shirley 1. I turned over and he rubbed the back of his hand on my breast. She also stated that when she was going to breakfast that morning Mr. Smith was smoking and he tried to pass his cigarette off to her. He also made the statement about how good my breast looked and he wanted to take one of them out and suck on it.
>
> 2. Has this ever happened before? She replied yes, when I was in Hale. Mr. Smith woke me up by rubbing my stomach, and asked me if I wanted to have blood work done, I replied no and he walked away. The next night I was going to the bathroom and he stated that I have nice breast and rubbed my breast with the back of his hand. He asked me what I was here for-then said I was a very nice looking young lady.
>
> 3. I asked her if she would take a CVSA to confirm that she was being truthful? She said she would think about it, and then 3 days later refused.

3

ORW Report, p.1.

**February 25, 2009**.  Ms. Reynolds was "brought up" to be drug tested.  *Id*.  Ms. Reynolds

was placed in Arn 4, the segregation unit.  Deposition of Dorothea Reynolds, p. 43 ("Reynolds

Depo.").  An officer searched her property and found a letter.  Reynolds Depo., p. 30, ORW Report,

p. 1.  That letter states in its entirety:

> I'm just sitting here looking at you.  I can't get my mind off of you.  I'm
> gone miss you for these two days that you are going to be off.  The cigarettes
> should last until you get back.  Think about me while your off.  Take a drink for
> me too (smile).  Well, I'm about to lay down and try to go to sleep.  See you in
> two days.  Oh, yeah, you said you can't wait to put your mouth on me!  Well I
> can't wait to put my mouth on you.  My tongue ring is not for decoration
> purposes.  I know how to use it very well!  You will see.  But before I get all hot
> and bothered, I'm gone end this.  Until next time …

Reply, Exhibit 2, Doc. 248-2.

**March 2, 2009**.  Ms. Bartlett and Ms. Roach interviewed Ms. Reynolds to question her

about the letter found on February 25.  Reynolds Depo.,  p. 44; ORW Report, p.2; Deposition of

Cynthia Bartlett, Doc. 101-1 at 40 ("Bartlett Depo."); Roach Depo. p.37.  Ms. Reynolds confirmed

that this letter was intended for Mr. Smith.  Reynolds Depo, p. 30; ORW Report, p. 2.

Their summary of this interview states:

> We then questioned inmate Reynolds 73571 on 3-2-09, because of the letter that
> was found in her property (exhibit D).  The letter basically says I am looking at
> you; I'm going to miss you on your days off.  The cigarettes should last me until
> you get back.  See you in two days.

> The questions we asked were:

> 1.   Who was the letter wrote to?  Officer Smith on 3rd shift.

> 2.  Did he ever touch you?  Yes on the butt.

> 3.  When did the touching happen?  When Meeker is in the bathroom or we are
>     taking out the trash.

4. Did CO Smith ever bring you tobacco? Yes, 4 days in a row. A bagful of menthol tobacco.

5. Have you ever kissed CO Smith? Yes, we took the trash out and we kissed behind the stairs for about a minute.

6. Did you ever give him your information? Yes, he has all my information.

7. Do you have all his information? He is supposed to give it to me, but I do not have it yet.

8. Have you written him any letter or notes. Yes about 10-15. I put them under a clip board and slide it to him.

9. Has he written you any notes? Yes. It was written on purple paper, but I got rid of it.

ORW Report at p. 2.

Following this interview, Ms. Reynolds was released back to Shirley 1. Reynolds Depo., p. 46. Ms. Reynolds "was specifically told by Bartlett to report any more incidents with Smith directly to her." Affidavit of Dorothea Reynolds, Doc. 106-1, at ¶ 7 ("Reynolds Aff."). Ms. Bartlett and Ms. Roach gave her a phone number to call (the institution's snitch line), asked her to report anything of substance to them and requested that she check in with them weekly. Bartlett Depo. at pp. 42, 43. Kissing between a prisoner and a guard is an unauthorized relationship. *Id.* at 40.

**March 19**. Ms. Reynolds underwent a Certified Voice Stress Analysis (CVSA) administered by Dean McCombs relating to the allegations of sexual misconduct made against Mr. Smith. Rebuttal Expert Report of Paul Shoemaker, Doc. 248-6 ("Shoemaker Report").

**April 2, 2009**. The investigators received the CVSA results from Mr. McCombs. ORW Report, p. 2. According to the ORW Report, the results of that test were as follows:

[Mr. McCombs] asked 11 questions, but only 3 were relevant to the case, they were:

1. Has CO Smith accepted personal notes from you? Yes.

2.  Did CO Smith give you tobacco?  Yes.

3.  Has CO Smith ever kissed you?  Yes.

Mr. McCombs stated that the results of the test showed no deception.  He had a second opinion conducted by Detective Scott Leland who had the same conclusion.

*Id*.

**April 15, 2009**.  Mr. Smith allegedly sexually assaulted Ms. Reynolds for the first time in the staff bathroom by forcing her to perform oral sex on him.  Reynolds Depo,. p. 75.  Officer Meeker had been sitting at the desk when Ms. Reynolds walked up.  *Id*.  Mr. Smith signaled Ms. Reynolds to meet him in the bathroom by a head nod.  *Id*. at 74.

**April 21, 2009**.  Mr. Smith allegedly sexually assaulted Ms. Reynolds for a second time in the same manner as before.  *Id*. at 84.

**April 27, 2009**.  Mr. Smith allegedly sexually assaulted Ms. Reynolds for a third time in the same manner as before.  *Id*. at 90.

**April 30, 2009**.  Ms. Reynolds was housed in Arn 4 when Mr. Calhoun threatened her and told her to keep her mouth shut about what Smith was doing to her.  *Id*. at 103; Reynolds Aff. ¶ 30.

**May 1, 2009**.  Ms. Reynolds reported the alleged sexual assaults to Sgt. Althaus.  *Id*. at ¶ 33.  Sgt. Althaus alerted the Ohio State Highway Patrol.  *Id*. at 34.  He also contacted Ms. Bartlett and Ms. Roach and told them to speak with Ms. Reynolds.  ORW Report, p. 2.  Ms. Bartlett and Ms. Roach interviewed Ms. Reynolds and she told them that she had had oral sex with Mr. Smith on April 15, 21, and 27.  *Id*.

**May 5, 2009**.  Ms. Reynolds took a polygraph test about the alleged sexual assaults and her answers were found not to be deceptive.  ORW Report, p. 3.  Ms. Reynolds was moved to pre-release.

**May 14, 2009**. The investigators interviewed Mr. Smith. ORW Report, p. 3. Mr. Smith denied all allegations relating to an inappropriate relationship with Ms. Reynolds. *Id*. at 4.

**June 1, 2009**. The investigation was closed and the report was submitted to Ms. Trim. *Id*.; Declaration of Cynthia Bartlett, Bartlett Dec. at ¶ 31. Ms. Trim became the temporary warden at ORW as of June, 2009. *Id*. at 17.

**June 2, 2009**. Warden Trim's signature appears on the last page of the investigation report with the handwritten date of 6/2/09 and the statement "Concur go to Pre-D." ORW Report; Trim Depo. p. 30.

## B. Procedural Background

Ms. Reynolds filed this §1983 action against all Defendants on March 31, 2011. *Complaint*, Doc. 1. The current motion is not the first dispositive motion or even summary judgment motion filed by Defendants over the six plus years this case has been pending. In response to their motion to dismiss filed June 7, 2011, the Court dismissed Ms. Reynolds' state court claims and her claims against them in their official capacities. *Order*, Doc. 34. The Court, both in a *Report and Recommendation* (Doc. 109) and the *Opinion and Order* adopting and affirming that *Report and Recommendation* (Doc. 114), denied Defendants' previous motion for summary judgment seeking the dismissal of Ms. Reynolds' claims on grounds either identical or similar to those asserted here. More specifically, the Court denied the Defendants' previous motion to the extent it sought summary judgment on statute of limitations grounds. The Court found that Ms. Reynolds' claims arose out of Smith's alleged sexual assaults beginning April 15, 2009, and so her complaint, filed on March 31, 2009, fell within the two-year statute of limitations for §1983 claims. Further, the Court denied summary judgment as to Defendants' exhaustion defense, finding genuine issues of material fact regarding whether the three-step inmate grievance procedure was "available" to Ms.

Reynolds.  Finally, the Court denied a grant of qualified immunity to the extent Defendants asserted that they were entitled to qualified immunity because Ms. Reynolds had not exhausted her administrative remedies.  The decision as to exhaustion was reaffirmed in the Court's *Opinion and Order* denying Defendants' motion for reconsideration  and, in the alternative motion to certify for interlocutory review (Doc. 218).

Defendants filed their current motion for summary judgment on January 30, 2017.  As noted, this matter has been fully briefed and is ripe for review.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides, in relevant part, that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  A fact is deemed material only if it "might affect the outcome of the lawsuit under the governing substantive law."  *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).  The necessary inquiry for this Court is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993)(quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).  In evaluating such a motion, the evidence must be viewed in the light most favorable to the nonmoving party.  *United States S.E.C. v. Sierra Brokerage Servs., Inc*., 712 F.3d 321, 327 (6th Cir. 2013).

## III.    ANALYSIS

Defendants raise three arguments in support of their summary judgment motion.  The Court will consider each argument in turn.

### A.  Statute of Limitations

Defendants rehash their argument that the statute of limitations began to accrue either on February 25, 2009, the date that prison officials searched Ms. Reynolds' cell and discovered a letter from her to Mr. Smith, or on March 2, 2009, when she was interviewed by ORW investigators.  In reasserting this argument, Defendants acknowledge that the Court previously determined that Ms. Reynolds is seeking redress only for the events of April 15, 2009 and thereafter.  They assert that, out of an abundance of caution, they include this argument for purposes of preserving it on the record.

The Court duly notes Defendants' argument.  For the reasons previously stated in both the Magistrate Judge's *Report and Recommendation* issued on May 1, 2015 (Doc. 109), and the Court's *Opinion and Order* issued September 8, 2015 (Doc. 114), adopting that *Report and Recommendation*, the Court concludes that the first harm for which Ms. Reynolds seeks redress occurred on April 15, 2009. Because this action was filed within two years of that date, Ms. Reynolds' claims are timely.  Consequently, the Court will not grant Defendants' motion for summary judgment to the extent they assert that Ms. Reynolds' claims are time-barred.

### B.  Failure to Exhaust Administrative Remedies

Defendants again raise the issue of exhaustion.  The Court previously has addressed this issue no less than 5 times.  *See Report and Recommendation*, ECF No. 30; *Opinion and Order*, ECF No. 34; *Report and Recommendation*, ECF No. 109; *Opinion and Order*, ECF No. 114; *Opinion and Order*, ECF No. 218.  This time, Defendants assert that, while the Court

previously determined that a genuine issue of material fact existed as to whether Ms. Reynolds exhausted her administrative remedies against Mr. Smith and Mr. Calhoun, the Court has not determined whether she exhausted her administrative remedies as to the other Defendants. Defendants contend that she has not done so and rely on the recent United States Supreme Court decision *Ross v. Blake*, 136 S.Ct. 1850 (2016) for support. Ms. Reynolds has responded to Defendants' latest iteration of its exhaustion argument in some detail. She addresses at length Defendants' challenge to the Court's previous conclusions to the extent Defendants rely on *Ross v. Blake*, *supra.* In their reply, Defendants assert a new argument in further support of their position that the Court must yet again reconsider its previous exhaustion ruling. According to Defendants, in her response, Ms. Reynolds presents "factually-inconsistent arguments" for her failure to exhaust and these alleged inconsistencies demonstrate the lack of a genuine issue of material fact. For the following reasons, it is time for Defendants to take the Court's conclusion that a genuine issue of material fact surrounds the issue of Ms. Reynolds' exhaustion for an answer.

In addressing this issue as raised in Defendants' first motion for summary judgment, the Court explained:

> This Court declines, under the particular facts of this case, to determine whether plaintiff's claims are subject to the usual inmate grievance procedure established by O.A.C. § 5120-9-31. The information provided to plaintiff upon her admission to ORW created, at the very least, ambiguity as to the proper method of reporting complaints of sexual misconduct or assault. *See, e.g.*, Raneri Deposition, pp. 39-41.

> Even assuming that sexual assaults fall within the scope of the grievance procedure established by O.A.C. § 5120-9-31, the Court concludes that the record reflects a genuine issue of material fact regarding plaintiff's compliance with those procedures or defendants' waiver of her obligation to pursue those procedures. As noted supra, plaintiff was advised that she could report a sexual assault by, inter alia, calling a hotline or telling a staff member. Plaintiff avers that she met with investigators after the first alleged assault and that she was told to report assaults by telephone. Plaintiff Affidavit, ¶¶ 12-13. The investigators allegedly assured plaintiff that "the sexual

assault reporting phone number would go directly to them [,] that it was the right procedure to follow to report sexual assaults" and that "it was the safest procedure to follow." *Id.* at ¶ 13. Plaintiff alleges that she in fact utilized that procedure following the alleged second assault. *Id.* at ¶ 16. When she met with investigators, they advised her to call the number they gave her if he assaulted her again and that she should obtain evidence of any future assault:

> Investigators came and met with me again to discuss Smith. The investigators told me again that the way to report sexual assaults was to call the number they gave me. However, this time, investigators also told me to try to get evidence of the sexual assaults. They suggested that after he forces me to perform oral sex and ejaculates, that I should spit his semen into a towel and keep it to give to them.

*Id.* at ¶ 17. After defendant Smith allegedly assaulted plaintiff a third time, plaintiff alleges that she called the number given to her to report the alleged assault. *Id.* at ¶¶ 19, 21. Defendants point to evidence that plaintiff did not approach corrections staff about any alleged sexual assaults until April 30, 2009, when she was placed in segregation for unrelated misconduct. Motion, p. 7; Reply, pp. 3, 5-6 (citing "Ohio State Highway Patrol Report of Investigation Investigative Notes," ECF 108-1). *See also* Bartlett Deposition, pp. 42, 44-45. This evidence establishes only that, at this stage of the proceedings, there exists a genuine issue of material fact and that summary judgment on this issue is unwarranted.

Plaintiff also contends that she was afraid to put information about defendant Smith's sexual assaults in writing because he had threatened her on multiple occasions and she feared that he would retaliate against her. Plaintiff Affidavit, ¶¶ 9-10, 19-20, 26-27, 32. She also feared retaliation from defendant Calhoun, defendant Smith's friend who also allegedly threatened her. Id. at ¶¶ 30-32. Although defendants dispute the credibility of plaintiff's claimed fear of retaliation, Reply, pp. 8-9, defendant Smith's "retaliation and intimidation — if proven true — would render the grievance process functionally unavailable for a person of ordinary firmness." *See Himmelreich*, 766 F.3d at 578.

In short, and construing this evidence in a light most favorable to plaintiff, the Court concludes that there remains a genuine issue of material fact as to whether the grievance process was, under the circumstances alleged by plaintiff, available to her.

*Reynolds v. Smith*, No. 2:11-cv-277, 2015 WL 1968867, at *9 (S.D. Ohio May 1, 2015), *adopted and affirmed*, 2015 WL 5212053 (S.D. Ohio Sep. 8, 2015).

Contrary to Defendants' interpretation that the Court's earlier conclusion was limited to Mr. Smith and Mr. Calhoun, nothing in the Court's previous orders supports such a reading. In reaching that conclusion, the Court was ruling on a motion filed on behalf of all Defendants. Certainly, if the Court intended to limit the application of its ruling to specific Defendants it would have so stated. Defendants' after-the-fact attempt to conjure such a restriction is disingenuous. Moreover, a variation of this argument was soundly rejected by the Court in its Opinion and Order denying Defendants' motion for reconsideration and interlocutory review. *Reynolds v. Smith*, No. 2:11-cv-277, 2016 WL 4480341, *4 (S.D. Ohio Aug. 25, 2016) (Doc. 218). ("Defendants' interpretation of the PLRA and guiding case law would thus give prison workers freedom to violate a plaintiff's rights with abandon so long as the particular defendant did not personally render administrative remedies unavailable. That result would be preposterous.").

Further, Defendants' submission that allegedly inconsistent factual assertions in Ms. Reynolds' response require the Court to reconsider its ruling at this stage is, at a minimum, unavailing. Certainly, "a reply brief is not the proper place to raise an issue for the first time." *United Tel. Co. of Ohio v. Ameritech Servs., Inc*., No. 2:10-cv-249, 2011 WL 53462, at *3 n.2 (S.D. Ohio Jan. 7, 2011) and the Court consistently declines to consider issues on this basis. Defendants' attempt to frame the issue as arising from *assertions* in Ms. Reynolds' response does not persuade the Court to consider this case to be the exception. Moreover, all of the alleged facts upon which Defendants contend Ms. Reynolds relies, and which Defendants now assert are inconsistent, were readily available to Defendants in moving for summary judgment. Specifically, to the extent Defendants cite to assertions in Ms. Reynolds' response based on averments in her affidavit, that document was filed with the Court on February 26, 2015. *See* Doc. 106-1. Further, to the extent that Defendants note by footnote that they have attached call logs to their reply that refute Ms.

Reynolds' sworn statements that she called the hotline number, this would appear to raise a factual issue.

Finally, to the extent that Defendants' motion can be read as suggesting that the decision in *Ross v. Blake*, *supra,* requires the Court to revisit its earlier decision, such an argument is wholly without merit. That case merely reaffirmed the well-understood principle, consistently applied by the Court in this case, that an inmate must exhaust "such administrative remedies as are available." 42 U.S.C. § 1997e(a). As well-documented, the availability of Ms. Reynolds' remedies is the focus of the Court's previous rulings. For all of these reasons, the Court declines to revisit the issue of whether Ms. Reynolds has raised a genuine of material fact relating to the exhaustion of her claim sufficient to overcome Defendants' motion for summary judgment. The Court remains satisfied that she has.

## C. Qualified Immunity

Defendants' also contend that they are entitled to qualified immunity. Their entire argument on this issue as set forth in their motion is restated here verbatim:

> Here, as set forth above, and especially as it pertains to the failure to protect claims, Defendants Bartlett, Duffey, Trim, McCombs, Woods, Owens, Meeker and Roach, were carrying out their respective duties and responsibilities as they believed appropriate. Plaintiff has put forth no evidence that these Defendants were aware of facts from which an inference could be drawn that a substantial risk of harm would exist if reasonable measures were not taken, that they then actually drew the inference, or acted in disregard of that risk. Plaintiff has offered no evidence that Defendant McCombs had any interaction with her other than entering ORW on a one time basis and performing the CVSA test, or that Defendant Owens had any involvement with Plaintiff at all. (Doc #: 162-1, PageID #: 2282) Moreover, no evidence exists that Defendant Roach had any involvement and/or knowledge of the instant case other than to assist Investigator Bartlett on an as needed requested basis. Plaintiff has offered no evidence that Defendant Trim had any involvement or knowledge until June 2, 2009, which was after Plaintiff had already been moved to Franklin Pre-Release. Lastly, Defendant Wood's only involvement was to immediately place the Warden and Investigators on notice upon receiving a complaint from Inmate on February 20, 2009. (Ex., A, ¶ 7).

Motion for Summary Judgment, Doc. 230, p.17.

In their motion, Defendants do not definitively identify the claim to which their qualified immunity defense is directed.   In reply, however, they indicate that their argument is directed to Ms. Reynolds' failure to protect claim. Ms. Reynolds' briefing is consistent with this understanding.

With respect to Mr. Smith, however, Defendants attempt to distinguish the claims directed to him from those against the other Defendants.   They do not, however, identify the specific claims Ms. Reynolds has directed to Mr. Smith nor do they address the elements of any claim within the context of making their qualified immunity argument as it pertains to him.   Instead, in reply, they simply make a broad argument under the sub-heading "Reynold's (sic) 42 U.S.C. § 1983 claims against Defendant Robert Smith."  *See* Reply, Doc. 248, p. 12.  This argument, in its entirety, states:

> Finally, Reynolds seeks compensation from the State Defendants for claims that Defendant Smith sexually assaulted her three times in April of 2009. (Complaint, Doc.1, *passim*). Against these allegations, Reynolds herself admits that she wrote Defendant Smith an explicit letter sometime in February of 2009. (Reynolds' Depo., Doc.247, at 3092-3093; Letter, Exhibit B). Upon staff finding the letter, institutional investigators not only interviewed various inmates and staff, but determined through objective video monitoring that her allegations were not substantiated. (Bartlett Dec., Doc.230-1, PageID#2893-4). In addition, the crash gates were kept closed throughout Defendant Smith's shifts from that point forward, making Reynolds' allegations impossible. The Supreme Court in *Scott v. Harris*, 550 U.S. 372, 380 (2007), in reversing the district court's denial of the defendant's qualified immunity, established that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt the version of the facts for purposes of ruling on a motion for summary judgment." The same is true here. Reynolds' claims of sexual assault are blatantly contradicted by record evidence. Defendant Smith is entitled to qualified immunity in this action.

*Id.* at p. 13.

There are two problems with this argument.  First, it is not raised within the framework of a qualified immunity analysis.  Moreover, it is raised for the first time in reply and Ms. Reynolds has

not had the opportunity to respond.  For these reasons, the Court will not consider Mr. Smith's claim of qualified immunity.  *See United Tel. Co. of Ohio v. Ameritech Servs., Inc*., *supra.*

With respect to the other Defendants, whether they are entitled to qualified immunity "turns on two questions:  did the defendant violate a constitutionally protected right, and if so, was the right clearly established at the time the act was committed?"  *Ruiz-Bueno v. Scott*, Nos. 14-4149, 14-4151, 639 Fed.Appx. 354, 358 (6th Cir. Feb. 2, 2016)(citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  "These questions may be addressed in any order that will facilitate a fair and efficient disposition of the case."  *Id*.   It is to these questions that the Court will now turn.

### A.  Clearly Established Right

Defendants do not address the issue of whether the constitutional right at issue here – the right to be free from sexual assault by a corrections officer - was clearly established at the time of the alleged events.  However, the Court easily concludes that it was.  Certainly, by that time, the United States Supreme Court had made clear that the Eighth Amendment imposes duties on prison officials to take reasonable measures to guarantee the safety of inmates.  *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).  There is no question that "prison officials have a duty … to protect prisoners from violence at the hands of other prisoners."  *Id*.  Courts have interpreted this Eighth Amendment right to include an inmates' right "to be secure in her bodily integrity and free from attack by prison guards."  *Barney v. Pulsipher*, 143  F.3d 1299, 1310 (10th Cir. 1998).  This interpretation has been consistent.  *See, e.g.,  Alderson v. Shelby County Gov't*, No. 11-2024-STA-dkv, 2012 WL 566934, *15 (W.D. Tenn. Feb. 21, 2012) ("[T]his constitutional right to be protected from assault and sexual abuse by other prisoners would extend to protection from assault and sexual abuse by prison guards and corrections officers as well."); *Clark v. Britton*, No. 2:11-cv-980, 2013 WL 6662820, *5 (S.D.

Ohio Dec. 17, 2013)(recognizing that a prisoner has a right to be free from sexual assault by a prison guard).

## B.  Constitutional Violation

The focus of Defendants' motion for summary judgment is that Ms. Reynolds has failed to establish a constitutional violation.  "To establish a constitutional violation based on failure to protect, a plaintiff must show that prison officials acted with 'deliberate indifference' to inmate health or safety."  *Bishop v. Hackel*, 63 F.3d 757, 766 (2011)(quoting *Farmer*, 511 U.S. at 834.  The Court of Appeals recently explained the concept of deliberate indifference in this way:

> "Deliberate indifference is a stringent standard of fault."  *Connick v. Thompson*, 563 U.S. 51, 61, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011)(internal quotation marks, brackets, and citation omitted).  To establish deliberate indifference [a plaintiff] must satisfy an objective and subjective component.  *Farmer*, 511 U.S. at 34, 114 S.Ct. 1970.  Under the objective component, [a plaintiff] must show that he was exposed to a "substantial risk of serious harm" to his safety.  *Id*. The subjective component requires [a plaintiff] to show that the individual defendants (1) were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]"; (2) actually drew the inference; and (3) consciously disregarded the risk.  *See id*. at 837, 839, 114 S.Ct. 1970.  Plaintiff may satisfy the subjective component through ordinary methods of proof, "including inference from circumstantial evidence[.]"  *Id*. at 842, 114 S.Ct. 1970.

*Mangum v. Repp*, No. 15-4292, 674 Fed.Appx. 531, 537 (6th Cir. Jan. 5, 2017).

Here, Defendants concede that Ms. Reynolds can satisfy the objective component of her failure to protect claim.  Given the nature of Ms. Reynolds' allegations, the Court also is satisfied that this component has been met.

Turning to the subjective component, the question before the Court is whether Ms. Reynolds has presented facts that, if true, show how Defendants, other than Mr. Smith, (1) were aware of facts from which the inference could be drawn that a substantial risk of serious harm to Ms. Reynolds existed, (2) actually drew the inference that there was a substantial risk, and (3) disregarded that risk.  *Id*.  To the extent the parties' briefing allows, the Court will consider these

issues as to each defendant individually.  *Id.* (citing *Garretson v. City of Madison Heights*, 407 F.3d 789, 797 (6th Cir. 2005)).

**Kenneth Calhoun**

Defendants contend that there is no evidence that Mr. Calhoun had any involvement with Ms. Reynolds until after the dates on which the alleged sexual assaults occurred.  Ms. Reynolds does not seriously contend otherwise.  Defendants' position is supported by the record.

The only evidence in the record addressed to Mr. Calhoun is Ms. Reynolds' testimony that he allegedly threatened her on April 30, 2017, while she was housed in Arn-4.  This date was two weeks after the first alleged incident and several days after the second or third.  This evidence would not allow a reasonable juror to infer that Mr. Calhoun was subjectively aware of the serious risk of harm to Ms. Reynolds prior to the alleged sexual assaults.  Consequently, the motion for summary judgment will be granted as to Ms. Reynolds' failure to protect claim directed to Mr. Calhoun.

**Dean McCombs**

Defendants assert that there is no evidence that Mr. McCombs exhibited deliberated indifference to Ms. Reynolds' safety needs.  The Court agrees.  Mr. McCombs' only involvement was in administering the CVSA exam to Ms. Reynolds on April 2, 2009.  He concluded that the results showed no deception.  He sought a second opinion which confirmed his conclusion. There is no evidence that Mr. McCombs had any additional contact with Ms. Reynolds beyond administering the CVSA exam.  Further, even assuming that he would be considered an official with protective duties relating to Ms. Reynolds, he discharged those duties by performing the test and delivering the results to the investigators at ORW.   Under this circumstance, Ms. Reynolds has not raised a genuine issue of material fact as to whether Mr. McCombs exhibited deliberate indifference to her

safety.  Consequently, the motion for summary judgment will be granted as to Ms. Reynolds' failure to protect claim directed to Mr. McCombs.

**William Owens**

Defendants contend that Mr. Owens did not have any involvement with Ms. Reynolds.  In arguing to the contrary, Ms. Reynolds relies on Inmate 2's statement and the email prepared by Ms. Wood on February 20, 2009.  Mr. Owens, however, explains that it was later determined that he worked with a different Officer Smith and Ms. Reynolds testified that she did not know who Mr. Owens was.

Defendants' interpretation of the record is correct.  Mr. Owens testified that he did not work with Mr. Smith while at ORW, did not work third shift in the cottage where Ms. Reynolds resided, and to the extent he worked in that cottage at all it was only on first shift.  Deposition of William Owens, Doc. 162-1, p.  40 ("Owens Depo").   At her deposition, Ms. Reynolds stated the she did not recall who Officer Owens was.   *See* Reynolds' Depo., p. 42.  Further, the complaint does not allege that Mr. Owens was on notice of any risk to Ms. Reynolds.  At most, in response to Defendants' motion, Ms. Reynolds asserts that Mr. Owens admitted that he had a duty to report any sexual relationships between staff and an inmate or that any such relationship by its terms is non-consensual and illegal.  This testimony, however, does not raise a genuine issue of material fact as to Mr. Owens' knowledge of the risk of harm specific to her.  Consequently, the motion for summary judgment will be granted as to Ms. Reynolds' failure to protect claim directed to Mr. Owens.

**Linda Wood**

Defendants contend that Ms. Reynolds has offered only conclusory speculation as to Ms. Wood's awareness of the accusations against Mr. Smith.  Moreover, they assert that, to the extent

Ms. Wood had any duties under the facts as alleged, she followed protocol. Beyond this, they argue that Ms. Reynolds suggests that Ms. Wood should be held liable solely on the basis of her supervisory role. Ms. Reynolds relies exclusively on the opinion of her expert, Wendy Still, to assert that, as an experienced staff member with supervisory responsibility, Ms. Wood should have recognized the significant risk. *See* Expert Report of Wendy Still, Doc. 251-3 ("Still Report").

The only information in the record relating to Ms. Woods is that she sent the email dated February 20, 2009, based on Inmate 1's allegations. There is no additional evidence in the record relating to her involvement after that date. There is no evidence at all of any direct interaction between Ms. Reynolds and Ms. Wood. There also is no evidence relating to Ms. Wood's interactions with other Defendants where they would have informed her of any information relating to Ms. Reynolds. Defendants are correct that Ms. Wood can be found liable based only on her own personal involvement. *Heyerman v. County of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012). Ms. Still's expert opinion as to Ms. Wood's supervisory responsibility, therefore, does not raise a genuine issue of material fact.

Further, assuming Mr. Reynolds could overcome the above hurdles, there is no evidence that Ms. Wood acted with disregard. Rather, the evidence is undisputed that she passed along Inmate 1's allegations to the Warden and put a directive in place. To the extent that this has any bearing on Ms. Reynolds' allegations made after the date of the directive, Ms. Wood acted reasonably. There is no evidence that Ms. Wood knew that her directive was not being followed. Consequently, the motion for summary judgment will be granted as to Ms. Reynolds' failure to protect claim directed to Ms. Wood.

**Ginine Trim**

Defendants contend that Ms. Trim is entitled to summary judgment because she was not appointed Warden at ORW until June 2009, after the alleged sexual assaults. The sole basis for Ms. Reynolds' claim directed to Ms. Trim, succinctly stated, appears to be Ms. Trim's knowledge of institutional sexual assault procedures. Again, Ms. Reynolds relies primarily on Ms. Still's expert opinion in an effort to raise a genuine issue of material fact.

The record confirms that Ms. Trim did not become the warden at ORW until after the alleged sexual assaults on Ms. Reynolds. The gist of Ms. Trim's deposition testimony is that she was not involved in any direct way with the investigation of Ms. Reynolds' allegations prior to the decision to move forward with disciplinary action against Mr. Smith. *See* Deposition of Ginine Trim, Doc. 96, at pp. 31-101 ("Trim Depo"). Much of her testimony is addressed generally to procedures pertaining to alleged sexual assault, not to Ms. Reynolds' alleged situation specifically. Ms. Reynolds has presented no evidence suggesting Ms Trim's direct involvement in the investigation. Similarly, she has presented no evidence that anyone else informed Ms. Trim of the investigation relating to Ms. Reynolds.

Ms. Still's opinion, to the extent the Court would even consider it, is directed to actions Ms. Trim should have taken prior to the alleged assaults based solely upon Ms. Trim's operations role at ORW, the position she held before she was named Warden. Ms. Still's opinion does not address actions that Ms. Trim should have undertaken based upon her specific knowledge of a threat to Ms. Reynolds. Ms. Still's opinion, on its own, is not sufficient to raise a genuine issue of material fact as to Ms. Trim's knowledge or disregard of a substantial risk of harm to Ms. Reynolds. Consequently, the motion for summary judgment will be granted as to Ms. Reynolds' failure to protect claim directed to Ms. Trim.

**Luke Meeker**

Defendants contend that Mr. Meeker is entitled to summary judgment because Ms. Reynolds' allegations against him are based solely on her mischaracterization of his statement to the Highway Patrol. Further, they assert that Mr. Meeker explained that it was not possible for Ms. Reynolds to have entered either his desk area or the staff bathroom because the crash gates were closed and only opened in the event of an emergency. Finally, they contend that Ms. Reynolds has identified no facts demonstrating Mr. Meeker's specific awareness of an inappropriate relationship between Mr. Smith and her.

Ms. Reynolds testified that, at least on the night of the first alleged incident, Mr. Meeker was sitting at the desk when she walked up before Mr. Smith signaled her to the bathroom. She provides no details, however, explaining that Mr. Meeker was aware of her interaction with Mr. Smith. Instead, she relies on two statements Mr. Meeker made to the OSHP to support her claim that he failed to protect her. The first statement is that Mr. Meeker had seen inmates go into the staff restroom to get paper towels and that, in such instances, Mr. Smith might be out of his sight for 5 to 15 seconds. *See* OHSP Statement, Doc. 248-5 ("Meeker Statement"). The second statement is that Ms. Reynolds was one of these inmates. *Id.* Beyond this, she merely relies on Ms. Still's opinion which, in summary, states nothing more than her opinion that Mr. Meeker had to know.

Ms. Reynolds has failed to raise a genuine issue of material fact relating to Mr. Meeker's knowledge. His deposition testimony states that he was not aware of any alleged inappropriate relationship between Ms. Reynolds and Mr. Smith because (1) he did not suspect it and (2) he did not know about the institutional investigation. Deposition of Luke Meeker, Doc. 161-1, pp. 43-44 ("Meeker Depo."). Ms. Still's opinion does not serve to refute this testimony in a way that would allow Ms. Reynolds to survive summary judgment on her failure to protect claim. In order for Ms.

Reynolds to succeed on this claim, it is not enough for her to show that a reasonable person would have known of the risk, or even that Mr. Meeker, given his proximity to the alleged events, should have known of the risk. Consequently, the motion for summary judgment will be granted as to Ms. Reynolds' failure to protect claim directed to Mr. Meeker.

**Jennifer Roach, Cynthia Bartlett and Sheri Duffey**

Despite the requirement that the issue of deliberate indifference be considered individually, the parties address Ms. Roach and Ms. Bartlett together. Further, Defendants contend, at least as far as their argument goes, that Ms. Duffey "had the same information as the Investigators." Relying on this representation, the Court will construe their argument as conceding that these Defendants were aware of the same facts for purposes of analyzing Ms. Reynolds' failure to protect claim directed to them.

In moving for summary judgment, these Defendants focus on Ms. Reynolds' initial allegations. They characterize these allegations as arising in February, 2009. They appear to concede that these allegations are enough to satisfy the first two prongs of a failure to protect claim and limit their focus to measures they allegedly took in response. These measures, as identified by Defendants, include Ms. Wood's directive, confronting Ms. Reynolds about the letter, status checks on Ms. Reynolds, continued monitoring, an offer to move Ms. Reynolds, and an offer to have her undergo a CVSA exam. The Court's consideration of these alleged measures reveals the following.

Significantly, Ms. Wood's directive resulted from Inmate 1's allegations made on February 20, 2009. At the time of this directive, video footage was available for one week prior, or dating back to February 13, 2009. Bartlett Dec. ¶ 12. These alleged "cautionary measures" clearly pre-date Ms. Reynolds' allegations and could not have been taken in response to them. Reply, Doc. 248, p. 12. Ms. Reynolds was not "confronted" with what Defendants characterize as an "explicit

letter," until March 2, 2009. *Id.* at pp. 11 - 12. Defendants' statement that Ms. Reynolds "was contacted on two different occasions so that she could provide a status update" is devoid of any specifics, explanation or details. *See* Bartlett Dec. at ¶ 19. Similarly, to the extent that these Defendants assert that "the investigators continued to monitor her," this statement is also lacking any specifics, explanation or details. *See* Reply, Doc. 248 at 12. Likewise, Defendants' assertion that they offered Ms. Reynolds the opportunity to transfer out of Shirley 1 is lacking in any description about Ms. Reynolds' potential placement or how this transfer could have impacted her safety. Defendants explain that they took these "cautionary measures" despite the fact that they believed in March, 2009, that Ms. Reynolds' allegations were false. *Id.*

Despite what Defendants may have believed, however, they took Ms. Reynolds' original allegations seriously enough to offer her the opportunity to undergo a CVSA test. Presumably, this offer was made during the interview on March 2, 2009. The results of this test showed no deception with respect to the allegations Defendants explain they believed were false. The CVSA results did not pertain to new allegations. Defendants, however, do not detail any "cautionary measures" they took on Ms. Reynolds' behalf after they received the CVSA results on April 2, 2009. *Id.* As noted, Defendants' entire argument regarding any action designed to protect Ms. Reynolds is limited to the time period prior to their receipt of these results. Construing the facts in the light most favorable to Ms. Reynolds with respect to the issue raised by Defendants' motion, a genuine issue of material fact exists as to whether these Defendants should have taken further action to protect Ms. Reynolds. Consequently, the motion for summary judgment as it relates to Ms. Reynolds' failure to protect claim directed to Defendants Roach, Bartlett, and Duffey will be denied.

## IV.     CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment (Doc.

230) is **GRANTED in part** and **DENIED in part**.  The motion is granted as to Plaintiff's failure to

protect claim against defendants Owens, McCombs, Meeker, Wood, Trim, and Calhoun and denied

in all other respects.

**IT IS SO ORDERED.**


**s/ Algenon L. Marbley**_____
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:  September 28, 2017**